**EXHIBIT B
TO THE NOTICE OF REMOVAL FILED
BY DEFENDANTS ON APRIL 16, 2007**

<u>Railroad Ins. Underwriters v. Certain Underwriters at Lloyd's, London, et al.</u>

07cv3071(LLS)

RAILROAD INSURANCE UNDERWRITERS

QUOTA SHARE TREATY

PREAMBLE

In consideration of the stipulations and conditions hereinafter set out and of the payment of premium in accordance with Article 7 hereof, this Contract is made, this 30th day of November 1963 between T.W. Adams, Manager, or his successor or successors in office (hereinafter called the "Management") as Manager of the Railroad Insurance Underwriters (hereinafter called the "Reassured"), for and on behalf of the Member Companies of the Reassured (including their affiliated and/or subsidiary Companies) as their respective interests may appear, party of the one part, and the Underwriters hereto (hereinafter called the "Reinsurers") each severally and not jointly, parties of the other part.

The Reassured, for the purpose of this Contract, is defined as a group of Companies formed for the purpose of insuring specialized risks, and this Contract is to protect the liabilities assumed, as herein provided, whether the binders, policies or contracts are issued by one or any number of its Member Companies; provided always that such liability is assumed only by and through the Management of the Reassured.

ARTICLE 1 - CESSIONS

The Reassured agree to cede and the Reinsurers agree to accept by way of Reinsurance

1. 20½% of 20% (4.1% of 100%) Quota Share of the Reassured's net retained liability in respect of Casualty business each and every risk.

2. 20½% Quota Share of the Reassured's net retained liability in respect of all other business protected hereby each and every risk.

ARTICLE 2 - EXCLUSIONS

This Contract does not apply to but specifically excludes:

(a) War, as per Article 14

(b) Nuclear Incident - Physical Damage and Liability - as per Nuclear Incident Exclusion Clauses attached hereto

(c) Life, Insolvency and Financial Guarantee

(d) Ocean Marine  *See Endorse No. 4*

(e) All forms of legal liability arising out of the operation or navigation of ships or vessels  *See Endorse No. 4*

ARTICLE 3 - TERM

This Contract shall take effect 12:01 A.M. on 30th November 1963 and shall protect business in force as of this date and written thereafter, and shall continue for an indefinite period but may be terminated at any 30th November by either party giving to the other at least 90 days prior written notice of desire to terminate.

- 2 -

ARTICLE 4 - EXCESS REINSURANCE.

It is noted and agreed that the Reassured's net retained liability as respects business other than Casualty is protected by excess loss reinsurance, also that two of these excesses covering for

1. $1,000,000 each and every disaster excess of $1,000,000 each and every disaster

   and

2. $2,000,000 each and every disaster excess of $2,000,000 each and every disaster

are for the benefit of Reinsurers hereon to the extent of their participation as indicated in Article 1.

In consideration thereof the Reinsurers hereby agree to bear their pro rata share of the cost of such excess of loss reinsurances.

ARTICLE 5 - SOLE JUDGE

The Reassured shall be sole judge as to what constitutes one risk.

ARTICLE 6 - FULL REINSURANCE CLAUSE

All reinsurance hereunder shall be subject to all the general and special stipulations and clauses of the original policies and the Reinsurers shall receive their proportionate share of the original gross premiums.

ARTICLE 7 - ACCOUNTS

The Reassured shall furnish to the Reinsurers through Guy Carpenter and Company Inc., as soon as practicable after the close of each quarter, an account setting out separately

1. As respects Casualty Business

2. As respects all other Business

the following details:



A.  1) Reinsurers proportion of net earned premiums for the quarter, i.e. premiums less return premiums.

2) Commission due the Reassured upon the net earned premiums contained in the account.

3) The appropriate amount of 1% Federal Tax.

4) Reinsurers proportion of losses paid plus loss expenses paid less salvages recovered for the quarter.

5) The balance due to or from Reinsurers which balance shall be paid within 60 days after the close of the quarter for which the account is rendered.

B.  In addition the Reassured shall supply a quarterly statement setting out:

1) The year of occurrence, in aggregate, of the paid losses referred to in A.4 above.

2) Reinsurers proportion of outstanding losses as of the end of the quarter.

- 3 -

3) Reinsurers proportion of unearned premium as of the end of the quarter.

## ARTICLE 8 - COMMISSION

A. The Reinsurers shall allow the Reassured a commission of 25% on the gross earned premiums received by them.

B. In addition to the aforementioned ceding commission the Reinsurers shall allow the Reassured a contingent commission allowance of 15% of the annual earned profits on the business ceded hereunder to be computed as follows:-

### INCOME

1. Net earned premiums during the current contingent period.

2. Amount of recoveries, if any, from the excess of loss covers referred to in Article 4.

3. Amount of unpaid losses in respect of business ceded hereunder as shown in previous year's contingent statement.

### OUTGO

4. An allowance for ceding commission, referred to in A above, on Item 1 above.

5. Losses and loss expenses paid during the current contingent period.

6. Amount of unpaid losses hereunder at the end of the current contingent period.

7. Amount of Reinsurers proportion of premium paid towards cost of excess of loss reinsurance.

8. Reinsurers management expenses calculated at 5% of Item 1 above.

9. Federal Stamp Tax, calculated at 1% of Item 1 after deduction of Item 4 above.

10. Deficit, if any, carried forward from previous contingent statements.

NOTE: Item 3 of Income and Item 10 of Outgo will not appear in the first Contingent Commission Statement.

The excess, if any, of items of Income over items of Outgo shall be considered as the earned profit on which the contingent commission shall be payable.

It is agreed that in the event of this agreement showing a loss on the results of any one year, the total amount of such loss shall be debited to the contingent commission account for the ensuing year or years and no contingent commission shall be considered as earned in such ensuing year or years until the previous loss has been balanced and a credit balance again restored.

In the event of the termination of this contract, no contingent commission statement shall be submitted for the contingent period during which the contract becomes terminated until all liability hereunder has ceased and until all losses hereunder have been settled.

- 4 -

ARTICLE 9 - LOSS SETTLEMENTS

All losses and loss expenses recoverable from the Reinsurers shall be charged in the quarterly accounts. However the Reassured may request a special advance for any loss where the Reinsurers share is $5,000 or more. Any loss so paid by Reinsurers in advance of the due date for quarterly settlement shall be credited to the Reinsurers in the subsequent account for the period concerned.

The Reinsurers shall be liable for their share of all expenses accruing to the Reassured in connection with the investigation or settlement or contesting the validity of losses or alleged losses (excluding salaries of employees and office expenses of the Reassured). Likewise, the Reinsurers shall be entitled to their pro rata share of any salvage and other recoveries received by the Reassured.

ARTICLE 10 - ACCESS TO REASSURED'S RECORDS

The Reinsurers shall have the right (by their duly qualified representatives) at all reasonable times to inspect all books and documents connected with the business coming within the scope hereof.

ARTICLE 11 - TAX CLAUSES

In consideration of the terms under which this Contract is issued, the Member Companies of the Reassured undertake not to claim any deduction in respect of the premium hereon when making tax returns, other than income or profits tax returns, to any State or Territory or to the District of Columbia.

In consideration of the terms under which this Contract is issued, the Member Companies of the Reassured undertake, when making Canadian tax returns, not to claim any deduction in respect of the premium hereon.

ARTICLE 12 - FEDERAL TAX CLAUSE

Notice is hereby given that the Reinsurers have agreed to allow for the purpose of purchasing U.S. Government Stamps for attachment hereto one per cent of the premium payable hereon to the extent such premium is subject to Federal Stamp Tax.

It is understood and agreed that in the event of any return of premium becoming due hereunder the Reinsurers will deduct from the amount of the return the same percentage as the allowance which they have made towards the Federal Stamp Tax.

ARTICLE 13 - ARBITRATION CLAUSE

As a precedent to any right of action hereunder, if irreconcilable differences of opinion should arise as to the interpretation of this Contract, it is hereby mutually agreed that such differences shall be submitted to arbitration, one arbiter to be chosen by the Reinsurers and one by the Reassured, and the third, if such be necessary, by the first two, the expense of such arbitration to be equally shared by the two parties in interest. The decision of a majority of the arbiters shall be final and binding upon both parties. In the event of arbitration said arbitration shall take place in New York, New York, unless some other location is mutually agreed upon.

ARTICLE 14 - NORTH AMERICAN WAR EXCLUSION

As regards interests which at time of loss or damage are on shore, no liability shall attach hereto in respect of any loss or damage which is occasioned by war, invasion, hostilities, acts of foreign enemies, civil war, rebellion, insurrection, military or usurped power, or martial law or confiscation by order of any government or public authority.

- 5 -

This War Exclusion Clause shall not, however, apply to interests which at time of loss or damage are within the territorial limits of the United States of America (comprising the fifty States of the Union and the District of Columbia and including bridges between the U.S.A. and Mexico provided they are under United States ownership), Canada, St. Pierre and Miquelon, provided such interests are insured under policies, endorsements or binders containing a standard war or hostilities or warlike operations exclusion clause.

### ARTICLE 15 - INTERMEDIARY CLAUSE

Guy Carpenter & Company, Inc., are hereby recognized as the Intermediary negotiating this Contract for all business hereunder, except Canadian business on which Guy Carpenter & Company (Canada) Limited are hereby recognized as the Intermediary. All communications relating thereto shall be transmitted to the Reassured and the Reinsurers through Guy Carpenter & Company, Inc., 110 William Street, New York 38, N.Y., (acting in behalf of themselves and Guy Carpenter & Company (Canada) Limited.

### ARTICLE 16 - SERVICE OF SUIT CLAUSE (U.S.A.)

It is agreed that in the event of the failure of Reinsurers hereon to pay any amount claimed to be due hereunder, Reinsurers hereon, at the request of the Management of the Reassured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder, shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon Messrs. Mendes & Mount, Attorneys, of 27, William Street, New York 5, New York and that in any suit instituted against any one of them upon this Contract, Reinsurers will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Reinsurers in any such suit and/or upon the request of the Management of the Reassured to give a written undertaking to the Management of the Reassured that they will enter a general appearance upon Reinsurers' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Reinsurers hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Management of the Reassured or any beneficiary hereunder arising out of this Contract of reinsurance, and hereby designate the above-named Mendes and Mount, as the firm to whom the said officer is authorized to mail such process or a true copy thereof.

### ARTICLE 17 - INSOLVENCY CLAUSE

Reinsurers hereby agree that(in the event of the insolvency of the Reassured)this Contract of reinsurance shall be so construed that the reinsurance shall be payable directly to the Reassured or to its liquidator, receiver or statutory successor by the Reinsurers(in the event of the insolvency of the Reassured)on the basis of the liability of the Reassured under the Contract or Contracts reinsured without diminution because of the insolvency of the Reassured. It is further agreed that the liquidator, the receiver or the statutory successor of the Reassured shall give written notice to the Reinsurers of the pendency of a claim against the Reassured on the policy reinsured within a reasonable time after such claim is filed in the insolvency proceedings;

- 6 -

that during the pendency of such claim the Reinsurers may investigate such claim and interpose at their own expense in the proceeding where such claim is to be adjudicated any defence or defences which they may deem available to the Reassured or its liquidator, receiver or statutory successor; that the expense thus incurred by the Reinsurers shall be chargeable subject to court approval against the Reassured as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to the Reassured solely as a result of the defence undertaken by the Reinsurers.

In any case in which under the terms of the policy and/or contract reinsured the liability of the insolvent member to its Insured is assumed, with the consent of the Insured, by the other members of the Reassured reinsurance under this Contract shall be payable by the Reinsurers directly to the Reassured.

ARTICLE 18 - CURRENCY

All premium and loss payments shall be made in the legal tender of the United States of America.

Attaching to and forming part of Policy No.R.62259 issued by Lloyd's Underwriters which Policy covers 79.59% of the total reinsurance granted under this form.



## LLOYD'S POLICY.

Whereas RAILROAD INSURANCE UNDERWRITERS of
(hereinafter called the Reassured) has promised to pay
the within provided Premium or Consideration to Us who have hereunto subscribed our Names
to Reinsure the Reassured as more fully described in the attached wording:—

614

79.5%

No. R.52339

If the Reassured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void, and all claim thereunder shall be forfeited.

Now know ye that We, the Underwriters, members of the Syndicate(s) whose distinctive Number(s) in the Schedule hereto are set out in the Table overleaf, or attached overleaf, hereby bind Ourselves, each for his own part and not one for another, our Heirs, Executors and Administrators, and in respect of his due proportion only, to pay or make good to the Reassured or the Reassured's Executors, Administrators and Assigns, or to indemnify him or them against all such Loss, Damage or Liability as aforesaid (subject to the conditions hereto expressed) not exceeding SEVENTY NINE POINT FIVE NINE PER CENTUM

payment to be made within Seven Days after such Loss, Damage or Liability is proved, and so that the due proportion for which each of Us the Underwriters is liable shall be ascertained by reference to his proportion as ascertained according to the said Schedule of the Amount, Percentage or Proportion of the total Sum insured which is in the said Table set opposite the distinctive Number of the Syndicate of which such Underwriter is a member.

In Witness whereof the Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE,

Manager.

Dated in London the 11th
Day of    March    One Thousand Nine Hundred
and    Sixty-Four



**Excess Insurance Company Limited**

Whereas RAILROAD INSURANCE UNDERWRITERS of

(hereinafter called the "Insured") has promised to pay as more fully set forth in Lloyd's Policy No. R.62259 Premium or Consideration to the Excess Insurance Company Limited (hereinafter called "the Company"), insures against Loss as follows, viz:—

20.41%

On interest as more particularly described in the form attached to Lloyd's Policy No. R.62259 the Company's liability under this policy being limited to 20.41% of the total reinsurance as provided in the form attached to Lloyd's Policy No. R.62259.

Subject to the same terms, clauses and conditions on identical subject matter and risk as more fully set forth in the form attached to Lloyd's Policy No. R.62259.

N° R.62259

This policy shall be in force continuously from 12:01 a.m. November 30th, 1963 Standard Time, Until terminated in accordance with the cancellation provisions set forth in the form attached to Lloyd's Policy NO.R.62259.

If the Insured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void, and all claim thereunder shall be forfeited.

Now know ye that the Excess Insurance Company Limited does hereby bind itself to pay or make good to the Insured or to the Insured's Executors and Administrators, all such Loss or Damage as aforesaid as may happen to the subject matter of this Insurance, or any part thereof, during the continuance of this Policy, but exceeding the sum of TWENTY POINT FOUR ONE PERCENTUM

such payment to be made within Seven Days after such Loss is proved.

In Witness whereof I being a Director of the Company have subscribed my name this 11th day of March one thousand nine hundred and Sixty-Four

Countersigned by
Excess Insurance Co. Ltd.

for EXCESS INSURANCE COMPANY LIMITED,

Managing Director.

REINSURANCE CONTRACT NO. R.62259 issued to the Railroad Insurance Underwriters (hereinafter called the "Reassured") by the Turegum Insurance Company (hereinafter called the "Reinsurer").

This Contract covers interest as more particularly described in the wording of Reinsurance Contract No. R.62259 between the Reassured and various Underwriting Members of Lloyd's, London (hereinafter referred to as "Original Contract"), the Reinsurer's liability under this Contract being limited to 13.565% of the total liability as provided in the wording of the Original Contract.

This Contract shall be subject to the same terms, clauses and conditions on identical subject matter and risk as more fully set forth in the wording of the Original Contract.

The term of this Contract shall be from Midnight 30th November 1967 and shall remain continuously in force subject to the same cancellation provisions set forth in the wording of the Original Contract.

SIGNED by the Reinsurer in ZURICH this 8 Th day of May 1968.

TUREGUM INSURANCE COMPANY,    REF: 1/3/13/06939