EXHIBIT L
TO THE CERTIFICATION OF BRIAN E. O'DONNELL
DATED APRIL 19, 2007

Railroad Ins. Underwriters v. Certain Underwriters at Lloyd's, London, et al.

07cv3071(LLS)

Westlaw.

Not Reported in F.Supp.  Page 1
Not Reported in F.Supp., 1988 WL 132868 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

H
Leventhal v. Franzus Co., Inc.
S.D.N.Y.,1988.
Only the Westlaw citation is currently available.
    United States District Court, S.D. New York.
STUART LEVENTHAL, FZUS, INC., f/k/a/ Franzus Company, Inc., and Marine Realty 23 St., Ltd., Plaintiffs,
v.
FRANZUS COMPANY, INC., and Remington Products, Inc., Defendants.
**No. 88 CIV. 3547 (MBM).**

Dec. 6, 1988.

Ira N. Glauber, Jaffe and Asher, New York City, for plaintiffs.
Carl F. Goodman, Jones, Day, Reavis & Pogue, New York City, for defendants.

OPINION AND ORDER
MUKASEY, District Judge.
*1 Defendants Franzus Co., Inc. (New Franzus), and Remington Products, Inc. (Remington), both Delaware corporations with their principal places of business in Connecticut, move: to dismiss a portion of this diversity action for failure to state claims upon which relief may be granted; for summary judgment on another portion of plaintiffs' action; and for sanctions. Fed R.Civ.P. 12(b)(6), 56, 11. Remington alternatively moves to dismiss for failure to allege facts that give a New York court personal jurisdiction over it. Fed.R.Civ.P. 12(b)(2). Plaintiff Stuart Leventhal (Leventhal) a New York citizen, as well as plaintiffs FZUS, Inc., f/k/a Franzus Co., Inc. (Old Franzus) and Marine Realty 23 St., Ltd. (Marine), New York corporations with their principal places of business in New York, move for summary judgment on a portion of their complaint; and they also seek sanctions. Fed.R.Civ.P. 56, 11. With the exception of plaintiffs' motion for sanctions, all motions are denied.

I.

Plaintiff Leventhal was co-owner and president of Old Franzus. On June 8, 1987, Leventhal conveyed the assets of Old Franzus to New Franzus in exchange for New Franzus' assumption of his debts. As part of this asset purchase agreement, New Franzus agreed to pay Leventhal $750,000.00 over five years in return for his promise not to compete with the new venture, and to pay Old Franzus $400,000.00 over five years.[FN1] Payments, due on June 8 of each year, were guaranteed by Remington, whose agent signed the asset purchase agreement. In an associated transaction, New Franzus agreed to employ Leventhal as its president for five years, compensating him with a salary of $125,000.00 per annum as well as a substantial portion of the new venture's profits. As part of the employment agreement, Leventhal and New Franzus agreed that Leventhal would have an office in New York City.

At the closing, the net worth of Old Franzus was deemed to be zero. In addition, Old Franzus represented to New Franzus that it had $742,000.00 in overdue accounts receivable, and a $300,000.00 tax refund due to it. The parties agreed that if the inventory and manufacturing assets were

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1988 WL 132868 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Page 2

worth less than the liabilities, or if New Franzus did not receive full payment from the delinquent accounts of Old Franzus, then Old Franzus would reimburse New Franzus for the shortfall. The parties agreed also that if the tax refund were less than the anticipated $300,000.00, Leventhal would be personally liable for the difference; and if the refund were greater than $300,000.00, the excess would be used reduce the shortfall, if any, in the assets or receivables. Finally, the parties agreed that if the tax refund did not make up any shortfall, New Franzus would withhold its installment payments to Leventhal and Old Franzus until the amount withheld plus the tax refund equalled the outstanding shortfall.

In a memorandum dated October 8, 1987, New Franzus asserted that the shortfall amounted to $1,402,849.00.[FN2] Leventhal Wrote to New Franzus and Remington, claiming that the shortfall was grossly inflated, but he claims that his letter went unanswered. On May 20, 1988, less than three weeks before New Franzus was to make its first payments to Old Franzus and Leventhal, plaintiffs commenced this action. In their complaint, plaintiffs seek declaratory, equitable, and legal relief for breach of the asset purchase and employment agreements, and an alleged lease agreement, for tortious interference with the employment agreement, and for unfair competition.[FN3]

II.

A. *Personal Jurisdiction*

*2 Initially, Remington moves to dismiss plaintiffs' entire action because the complaint does not allege facts which would subject Remington to personal jurisdiction in New York. Fed.R.Civ.P. 12(b)(2). Remington argues that without such allegations, any exercise of jurisdiction over it would violate the Fourteenth Amendment's due process clause. *See International Shoe v. Washington,* 326 U.S. 310, 316 (1945). While many of Remington's observations about plaintiffs' inartfully drawn complaint are accurate, they do not provide either the legal or the factual basis for a motion to dismiss for lack of personal jurisdiction. In fact, when viewed in context, Remington's objection to *in personam* jurisdiction is frivolous.

When a federal court exercises diversity jurisdiction, it decides motions to dismiss for lack of personal jurisdiction by applying the substantive law of the state in which it sits. *United States v. First Nat'l City Bank,* 379 U.S. 378, 381-82 (1965); *Arrowsmith v. United Press Int'l,* 320 F.2d 219, 221-31 (2d Cir.1963) (*en banc*). While plaintiffs ultimately must prove every element of their claim, including jurisdiction, their complaint need not state the facts which establish personal jurisdiction over defendants. *Stirling Homex Corp v. Homasote Co.,* 437 F.2d 87 (2d Cir.1971) (*per curiam*). Instead, only when a court is faced with a motion to dismiss for lack of personal jurisdiction must it look at both the pleadings and the affidavits to determine if a basis for *in personam* jurisdiction exists. *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981). Moreover, as with all motions to dismiss, the complaint and any other evidence must be viewed in the light most favorable to plaintiffs, with all doubts resolved in plaintiffs' favor. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985). Finally, where an evidentiary hearing is not held on the issue, plaintiffs need establish only a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1988 WL 132868 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

Page 3

prima facie case for jurisdiction over the moving party in order to defeat the motion. *Cutco Indus. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986).

In this case, the complaint does not provide the facts necessary to support the exercise of jurisdiction over New Franzus. However, my inquiry here need not even go as far as plaintiffs' affidavits in opposition to the motion; Remington's own papers show conclusively that jurisdiction over the firm is proper in New York. Exhibit A to Remington's motion to dismiss discloses that the asset purchase agreement that spawned this suit was executed by Remington in New York City at the offices of Remington's current counsel.[FN4] Under New York law, a court may assert personal jurisdiction over Remington for suits arising out of this agreement. *Fontanetta v. American Bd. of Internal Medicine,* 421 F.2d 355, 357 (1970); *George Reiner & Co. v. Schwartz,* 41 N.Y.2d 648, 394 N.Y.S.2d 844, 363 N.E.2d 551 (1977); *Parke-Bernet Galleries v. Franklyn,* 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970); N.Y.Civ.Prac.L. & R. 302(a)(1) (McKinney 1988). Moreover, a review of Remington's contacts with the jurisdiction reveals that Remington negotiated and executed the asset purchase agreement in New York, and agreed that New York law would govern the contract's interpretation. Given these facts, it is clear that Remington purposefully availed itself of the benefits of New York law in order to effect this transaction. Therefore, any due process objections to jurisdiction are entirely without merit. *Burger King Corp v. Rudzewicz,* 471 U.S. 462, 475 (1985) *citing Hanson v. Denckla,* 357 U.S. 235, 253 (1958); *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 413-15 (1984); *International Shoe,* 326 U.S. at 316. Accordingly, this court will exercise personal jurisdiction over Remington for claims arising out of its agreement to guarantee the payments of New Franzus to Old Franzus and Leventhal.

*3 Even if the movant's own papers did not reveal a basis for exercising *in personam* jurisdiction over Remington, plaintiff's evidence, produced in opposition to the motion to dismiss, shows conclusively that Remington is subject to personal jurisdiction in New York as a firm doing business in the state. Plaintiffs' uncontradicted evidence shows that Remington has been licensed to do business in New York since August 1979, and has derived 15% of its revenues here (Affidavit of Stuart Leventhal ¶ 37). That a corporation is licensed to do business in New York, without more, is strong evidence that the corporation is subject to *in personam* jurisdiction in New York. *Beja v. Jahangiri,* 453 F.2d 959, 962 (2d Cir.1972); 1 Weinstein, Korn & Miller, New York Civil Practice ¶ 301.10 (rev. ed. 1988). Moreover, when one considers also the substantial revenue Remington derives in New York, it is beyond peradventure that Remington is present in New York, and may therefore be sued in the state, even if the claim does not arise out of acts committed in New York. *Antonana v. Ore S.S. Corp.,* 144 F.Supp. 486 (S.D.N.Y.1956) (defendants licensed to do business in New York may be sued in New York on any cause of action); *Tauza v. Susquehanna Coal Co.,* 220 N.Y. 259, 115 N.E. 915 (1917) (unlicensed corporation doing substantial business in New York may be sued in New York); *McGowan v. Smith,* 52 N.Y.2d 268, 437 N.Y.S.2d 643, 419 N.E.2d 321 (1981) (unlicensed defendant with insubstantial revenues from sales in New York may not be sued in New York); Siegel, New York Practice § 82 (1978); N.Y.Bus.Corp.Law § 304 (McKinney 1986); N.Y.Civ.Prac.L. &

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 4
Not Reported in F.Supp., 1988 WL 132868 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

R. 301 (McKinney 1972). Of course, when a firm is present in New York, the state's courts may exercise personal jurisdiction over the firm without offending due process. *International Shoe,* 310 U.S. at 316-17 (collecting cases). In addition, even if Remington were not actually present in New York, the volume and quality of its contacts with New York make it constructively present in the state, and therefore, the exercise of jurisdiction over it is in accord with due process. *Hall,* 466 U.S. at 413-15; *International Shoe,* 326 U.S. at 316-17. Accordingly, it is also appropriate to exercise *in personam* jurisdiction over Remington as a corporation doing business in New York.

Finally, plaintiffs assert that Remington induced New Franzus to breach its contract with Leventhal. Reading the evidence in the light most favorable to the nonmoving party, at least some of these acts had an effect in New York, where Leventhal, New Franzus' president, maintains an office, and where Remington derives substantial revenue. Therefore, plaintiffs also have made out a prima facie case for jurisdiction over Remington for claims arising out its allegedly tortious activity. N.Y.Civ.Prac.L. & R. 302(a)(3) (McKinney 1972).

B. *Anticipatory Breach of the Asset Purchase Agreement*

Defendants move to dismiss plaintiffs' first claim for relief, based on anticipatory repudiation of the asset purchase agreement, asserting that as a matter of law and fact this claim cannot be sustained. Fed.R.Civ.P. 12(b)(6). In support of their motion, defendants note that New York does not permit recovery for the anticipatory repudiation of an executory contract to pay money. *Romar v. Alli,* 120 A.D.2d 420, 501 N.Y.S.2d 877 (N.Y.App.Div.1986). Put slightly differently, when a plaintiff has completely performed, and merely awaits periodic payments from the defendant, plaintiff may not recover for anticipatory breach of the contract, but may only recover the payments due at the time of suit. *Kelly v. Security Mut. Life Ins. Co.,* 186 N.Y. 16, 78 N.E. 584 (1906); *Apostolou v. Mutual of Omaha Ins. Co.,* 72 A.D.2d 781, 421 N.Y.S.2d 600 (N.Y.App.Div.1979) (citing cases). In contrast, if at the time of the breach, both parties are still obligated to perform under the contract, recovery for anticipatory breach of the contract is permitted. *Long Island R.R. v. Northville Indus. Corp.,* 41 N.Y.2d 455, 466-68, 393 N.Y.S.2d 925, 932-33, 362 N.E.2d 558, 565-66 (1977). The rationale often given for this rule is that when an injured party has already performed, it is unnecessary to grant him immediate relief. *Hampton v. District Council 37 Health & Security Plan,* 97 Misc.2d 324, 327-28, 411 N.Y.S.2d 124, 127 (N.Y.City Civ.Ct.1978). Defendants assert that at the time of the alleged breach, Old Franzus and Leventhal had no obligations under the asset purchase agreement, and that they merely awaited the periodic payments of money due to them. Defendants therefore conclude that plaintiffs may not recover for the anticipatory breach of the asset purchase agreement.

*4 Defendants' position cannot be sustained because it incompletely characterizes the contract. Under the asset purchase agreement, the main obligation of Old Franzus and Leventhal was to deliver the assets, and that had been completed before the alleged breach. However, when defendants allegedly repudiated the asset purchase agreement, both Old Franzus and Leventhal had continuing ancillary

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-03071-LLS    Document 8-13    Filed 04/19/2007    Page 6 of 14

Not Reported in F.Supp.
Not Reported in F.Supp., 1988 WL 132868 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

Page 5

obligations under the contract. For example, Old Franzus was obligated to take any actions necessary for New Franzus to receive Old Franzus' tax refund. For his part, Leventhal was obligated not to compete with the new venture. Moreover, both Old Franzus and Leventhal were still obligated not to take any extraordinary actions in the collection of accounts receivable, and were required to reimburse New Franzus for any shortfall.

Accordingly, at the time the contract was allegedly repudiated by defendants, "there existed some dependency of obligation" between the parties. *Northville Indus. Corp.*, 41 N.Y.2d at 466, 393 N.Y.S.2d at 932, 362 N.E.2d at 565, citing Restatement of Contracts § 318 comment e (1932); see Restatement (Second) of Contracts § 253 comment c (1981). There was more than a mere executory contract for the payment of money. Therefore, a claim for defendants' alleged anticipatory breach of the obligation is legally cognizable in New York, and their motion to dismiss the first claim on these grounds is denied.

Alternatively, defendants assert that the complaint should be dismissed because it does not successfully allege an anticipatory breach. Fed.R.Civ.P. 12(b)(6). In that regard, the parties agree that an anticipatory repudiation is a "definite and unconditional repudiation of the contract by a party thereto, communicated to the other." 4 Corbin, Contracts § 959 (1951). Professor Corbin goes on to explain that a repudiation is "a definite statement to the promisee that he either will not or can not perform [the] contract." *Id.*; see *Burtis v. Thompson*, 42 N.Y. 246 (1870); *Didier v. Macfadden Publications, Inc.*, 299 N.Y. 49, 85 N.E.2d 612 (1949); *Gittlitz v. Lewis*, 28 Misc.2d 712, 212 N.Y.S.2d 219 (N.Y.Sup.Ct.), *appeal denied,* 13 A.D.2d 688 216 N.Y.S.2d 676 (N.Y.App.Div.1961). Defendants argue that the first claim does not allege that they unconditionally repudiated the agreement.

As to New Franzus, the first claim may be read to allege that New Franzus refuses to entertain any calculation of the shortfall other than its own. The complaint may thus be read to allege that, in advance of the date of its performance, New Franzus maintains an untenable construction of the contract on a matter of substance. Such allegations, if true, "will be regarded as a repudiation of the contract," which give rise to a cause of action for anticipatory breach. *District Council 37*, 97 Misc.2d at 327, 411 N.Y.S.2d at 127, citing *Pacific Coast Eng'g Co. v. Merritt-Chapman & Scott Corp.*, 411 F.2d 889, 895 (9th Cir.1969). Thus, plaintiffs have sufficiently alleged that New Franzus has anticipatorily repudiated the asset purchase agreement, and therefore, New Franzus' motion to dismiss this claim on these alternative grounds is denied.

*5 As to Remington, plaintiffs have not alleged explicitly that the firm has unconditionally repudiated its agreement to guarantee New Franzus' payments. However, the complaint does allege that Remington has told plaintiffs "that the payments ... will not be made." Complaint ¶ 14. Moreover, the complaint alleges that Remington adheres to New Franzus' allegedly unreasonable interpretation of the contract in order avoid its obligation to pay plaintiffs. Therefore, when seen in the light most favorable to plaintiffs, the complaint may be read to assert that Remington has anticipatorily repudiated its obligations in much the same way that New Franzus has repudiated its obligations. To that extent, the complaint states a claim against

Not Reported in F.Supp. Page 6
Not Reported in F.Supp., 1988 WL 132868 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Remington for anticipatory repudiation of the asset purchase agreement, and therefore Remington's motion to dismiss the first claim for failure to allege anticipatory repudiation is denied.

### C. *Declaratory Judgment of the Parties' Rights and Liabilities*

Defendant also seeks to dismiss plaintiffs' second claim, a prayer for a declaratory judgment of the parties' rights and liabilities under the asset purchase agreement, alleging that there is no justiciable claim presented by plaintiffs' allegations. Fed.R.Civ.P. 12(b)(6). Under the Declaratory Judgment Act, 28 U.S.C. § 2201(a) (Supp. II 1984), a district court has discretion to grant or deny declaratory relief. *Public Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 241 (1952). "[T]he question in each case is 'whether the facts alleged ... show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.' " *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 122 (1974), *quoting Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941). In expanding on the justiciability requirements, courts have inquired whether the litigants have a personal stake in a clearly defined dispute, the litigation of which will terminate the controversy. *See Warth v. Seldin*, 422 U.S. 490, 498-500 (1975) (allegation of a personal stake in the outcome necessary to establish standing); *Wycoff*, 344 U.S. at 244 (the controversy must have matured beyond a mere contingency to be justiciable under the Act).

The pleadings reveal the existence of a substantial controversy whose resolution will have an immediate and real impact on both parties. Plaintiffs allege that under the asset purchase agreement, they are entitled to $1,150,000.00 from New Franzus, with payment to be guaranteed by Remington. The complaint reveals also that New Franzus asserts it is entitled to retain all of these payments. As a corollary, the complaint may be read to allege that Remington, as guarantor of New Franzus' debt, asserts that it too is not liable to plaintiffs under the contract. These conflicting claims, which arise out of different interpretations of the contract, may be settled definitively by declaring the proper method of calculating the parties' obligations under the asset purchase agreement. Under these circumstances, there is a justiciable controversy between these parties. Therefore, the exercise of jurisdiction under the Declaratory Judgment Act is appropriate. Accordingly, defendants' motion to dismiss the declaratory judgment action is denied.

### D. *Tortious Interference With Leventhal's Employment Agreement*

*6 Remington moves to dismiss the portions of the seventh and eighth claims which seek relief for tortious interference with the Leventhal-New Franzus employment agreement.[FN5] Remington alleges that plaintiffs fail to state a claim upon which relief may be granted. Fed R.Civ.P. 12(b)(6). Remington argues that in order to state a claim for tortious interference with employment, the complaint must plead that Remington acted solely out of malice. In addition, Remington asserts that these claims should be dismissed for failure to allege interference.[FN6]

Normally, in the employment context, courts

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-03071-LLS    Document 8-13    Filed 04/19/2007    Page 8 of 14

Not Reported in F.Supp.                                                                 Page 7
Not Reported in F.Supp., 1988 WL 132868 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

are asked to determine what constitutes tortious interference with employment at will. *E.g., Sullivan v. American Airlines, Inc.,* 613 F.Supp. 226 (S.D.N.Y.1985). In such cases, it is uncertain that either the employee or the employer will receive the anticipated benefits of the relationship, because either may end the contract for no reason at all, with little or no notice. Thus, each party to an employment-at-will relationship usually has a mere expectancy. Similarly, in cases involving tortious interference with prospective contractual relations, it is uncertain what benefit, if any, would have inured to a plaintiff if the tortfeasor had not discouraged others from dealing with that plaintiff. Given these considerations, "it is ... in the ... public [interest] that any competitor should be free to divert [plaintiff's potential customers] to himself by all fair and reasonable means, if for no other reason than that any other rule would tend to [establish] ... monopolies." Keeton, Dobbs, Keeton & Owen, Prosser and Keeton on Torts (Prosser) § 130 at 1012 (5th ed. 1984); *see id.* § 129 at 987 (same for employment at will).

In accordance with that policy, New York has determined that in order to state a claim for tortious interference with employment at will, or with prospective economic relations, plaintiffs must assert that the alleged tortfeasor acted maliciously. *E.g., Hammerhead Enters., Inc. v. Brezenoff,* 551 F.Supp. 1360, 1369 (S.D.N.Y.1982), *aff'd,* 707 F.2d 33 (2d Cir.), *cert. denied,* 464 U.S. 892 (1983) (prospective economic relations); *American Airlines,* 613 F.Supp. at 232 (employment at will). By contrast, where a contract exists, the parties have a defined legal duty to one another. That duty, "as distinct from the mere prospect of business, may therefore narrow the range of interference that may be considered proper by a defendant in pursuit of his own ends, with the result that liability may be more expansive where there is an actual contract." Prosser § 129 at 981. In giving form to that policy, New York has determined that in order to state a claim for tortious interference with a contract, plaintiff need assert only that the tortfeasor performed a purposeful act which was intended to induce the breach plaintiff complains of. *E.g., Universal City Studios, Inc. v. Nintendo Co.,* 797 F.2d 70, 75 (2d Cir.), *cert. denied,* 479 U.S. 987 (1986); *Guard-Life Corp. v. Parker Hardware Mfg. Corp.,* 50 N.Y.2d 183, 190-94, 428 N.Y.S.2d 628, 632-34, 406 N.E.2d 445, 448-50 (1980); *Alvord & Swift v. Stewart M. Muller Constr. Co.,* 46 N.Y.2d 276, 281-82, 413 N.Y.S.2d 309, 312, 385 N.E.2d 1238, 1241 (1978); *Israel v. Wood Dolson Co.,* 1 N.Y.2d 116, 120, 151 N.Y.S.2d 1, 5, 134 N.E.2d 97, 99 (1956); *Hornstein v. Podwitz,* 254 N.Y. 443, 447-48, 173 N.E. 674, 675 (1930) (citation omitted) ("it is settled that malice in the sense of spite or ill will is not the gist of such an action"); 72 N.Y.Jur.2d *Interference* §§ 11, 22, 24, 29 (1988); Prosser § 129 (1984). *But see Strobl v. New York Mercantile Exch.,* 561 F.Supp. 379, 386 (S.D.N.Y.1983) ("it appears that" malice must be pleaded in a tortious interference with contract claim).

*7 Examining Leventhal's employment agreement with these principles in mind, it is apparent that the policies protecting actual contracts should prevail in this case. Leventhal has a written contract with New Franzus which permits his termination only for willful and intentional breaches of the contract not remedied within 30 days, or for conviction of a felony. Therefore, Leventhal's interest in the benefits of the contract's performance is greater than the interest that an employee at will has in his continued employment. Moreover,

Not Reported in F.Supp.  
Not Reported in F.Supp., 1988 WL 132868 (S.D.N.Y.)  
**(Cite as: Not Reported in F.Supp.)**

Page 8

Leventhal's interest is also greater than any interest that a merchant could have in merely prospective contractual relations. Thus Leventhal's interest in the performance of the employment agreement is similar to a party's interest in the performance of any other written agreement.

Beyond the policy considerations, there is also case law to support the position that Leventhal need not show malice in order to state a claim for tortious interference with his employment agreement. In *Campbell v. Gates,* 236 N.Y. 457, 141 N.E. 914 (1923), the Court of Appeals held that tortious interference with a contract for professional services occurs when a tortfeasor, who knows of a valid employment contract for professional services, commits an intentional act whose probable and foreseeable outcome is that one party will breach the contract, causing the other party damage. *Gates,* 236 N.Y. at 458-60, 141 N.E. at 914-15. In *Gates,* a key employee of a new magazine was induced to breach his contract with the magazine's founder. In determining that the magazine's founder could sue for tortious interference with the employment contract, the Court of Appeals held that the publisher did not have to plead actual malice or ill will in order to state a claim for tortious interference with its employment contract. *Gates,* 236 N.Y. at 460, 141 N.E. at 915. The *Gates* formulation of the tort is consistent with the decisional law of today, and with the policies that underlie it. *E.g. Nintendo,* 797 F.2d at 75; *Parker Hardware,* 50 N.Y.2d at 190-94, 428 N.Y.S.2d at 632-34, 406 N.E.2d at 448-50 (1980); *Stewart M. Muller Constr. Co.,* 46 N.Y.2d at 281-82, 413 N.Y.S.2d at 312, 385 N.E.2d at 1241; *Wood Dolson Co.,* 1 N.Y.2d at 120, 151 N.Y.S.2d at 5, 134 N.E.2d at 99; 72 N.Y.Jur.2d *Interference* §§ 11, 22, 24, 29 (1988); Prosser § 129. Accordingly, it will be applied here.

A fair reading of plaintiffs' seventh and eighth claims reveals that the necessary allegations have been pleaded. The complaint alleges that as part of the employment agreement with New Franzus, Leventhal was to share in the firm's profits. The complaint may also be read to allege that because Remington signed the asset purchase agreement, it knew that contract's provisions, including the one mentioning the New Franzus employment agreement with Leventhal. The complaint may be read to allege also that Remington acted intentionally to misappropriate New Franzus' profits. Finally, the complaint alleges that these acts induced New Franzus to breach its profit-sharing agreement with Leventhal, causing Leventhal to lose money he would otherwise have received. Therefore, the seventh and eighth claims state a claim for tortious interference with the Leventhal-New Franzus employment agreement.

*8 New Franzus also moves to dismiss the eighth claim either as premature or as subject to arbitration, relying on a portion of its employment agreement with Leventhal which reads:

In the event that [Leventhal] shall disagree with any calculation by [New Franzus] of [New Franzus'] Net Profits for a fiscal year or portion thereof, [Leventhal] shall so notify [New Franzus]. [New Franzus] and [Leventhal] shall thereupon seek to resolve such disagreement amicably; if such disagreement is not resolved to the parties' satisfaction within 90 days from [Leventhal's] first notice thereof, however, such disagreement *may* be submitted to arbitration ...

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                 Page 9
Not Reported in F.Supp., 1988 WL 132868 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

(Leventhal Affidavit Exhibit E at pp. 5-6 (emphasis added)). New Franzus asserts that the complaint does not plead Leventhal's compliance with these provisions. New Franzus therefore concludes that the complaint should be dismissed as premature, or alternatively, dismissed in favor of arbitration.[FN7]

The notice and waiting period provisions relate only to the initiation of arbitration, not to the commencement of a lawsuit. Therefore, defendants' objection that the eighth claim is premature has no basis in the contract.[FN8] As to the issue of arbitration, the contract states that the parties *may* submit their disagreements to arbitration. However, arbitration will be compelled only when there is an unequivocal written agreement to arbitrate a particular issue. *E.g., Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 241 (1962) *citing United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582 (1960); *Bowmer v. Bowmer,* 50 N.Y.2d 288, 293-94, 428 N.Y.S.2d 902, 905, 406 N.E.2d 760, 762 (1980); *Just In-Material Designs, Ltd. v. I.T.A.D. Assocs, Inc.,* 94 A.D.2d 103, 105-06, 463 N.Y.S.2d 202, 204 (N.Y.App.Div.1983) *aff'd,* 61 N.Y.2d 882, 474 N.Y.S.2d 470, 462 N.E.2d 1188 (1984). This is not such an agreement. Therefore, the dispute over New Franzus' profits may be resolved by arbitration, or may be resolved in this forum. Accordingly, defendants' motion to dismiss the eighth claim in favor of arbitration is denied.

*E. Defendants' Motion for Summary Judgment*

Defendants move for summary judgment on Leventhal's breach-of-employment-agreement claim, and the refusal to repay $35,000 allegedly due Old Franzus.[FN9] Their motion is denied. Defendants have not presented any evidence to demonstrate that there is no genuine issue of material fact on either of these claims. Instead, defendants merely assert that the claims are meritless. Therefore, they have failed to carry their burden of proving that summary judgment is appropriate on this claim. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970); Fed.R.Civ.P. 56(c).

III.

Plaintiffs move for summary judgment on the third and fourth claims, in which they seek back rent on Leventhal's offices from June 1987. Fed.R.Civ.P. 56. Plaintiffs' motion is denied because the record reveals that there are genuine issues of material fact.[FN10] For example, plaintiffs present evidence that the agreement to pay rent is oral, and that defendants have paid rent regularly on the property (Leventhal Affidavit at ¶¶ 39, 40). Therefore, plaintiffs seem to plead the existence of a contract or quasi contract. Meanwhile, defendants present evidence that no agreement to pay rent exists, and that rent has never been paid (Affidavit of Robert Romano In Opposition to Plaintiffs' Motion for Summary Judgment ¶¶ 3-7, 9). Before judgment may be granted to either side as a matter of law, this factual dispute will have to be resolved. Where, as here, the parties present competent evidence supporting their opposing views of a material fact, summary judgment is improper. *United States v. One Tintoretto Painting Entitled "The Holy Family With Saint Catherine and Honored Donor,"* 691 F.2d 603, 606 (2d Cir.1982); *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980);

Not Reported in F.Supp. Page 10
Not Reported in F.Supp., 1988 WL 132868 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Fed.R.Civ.P. 56(c).

IV.

*9 Defendants move to sanction plaintiffs, asserting that the complaint is frivolous. Fed R.Civ.P. 11. Although the complaint is not always perfectly clear, and is in places poorly drafted, it does state claims upon which relief can be granted. Therefore, it is not frivolous. Accordingly, defendants' motion for sanctions is denied.

Plaintiffs also move to sanction defendants, asserting that defendants' motion is frivolous. Fed.R.Civ.P. 11. Under Rule 11, sanctions must be imposed when it appears that a competent attorney, after reasonable inquiry, could not form the reasonable belief that a pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 (1985); *see* Standards and Guidelines For Practice Under Rule 11 of the Federal Rules of Civil Procedure, *reprinted in* 121 F.R.D. 101, 113-20 (1988). In other words, when it should be clear to an objective observer that a claim has absolutely no chance of success under existing precedents, and where no objectively reasonable argument has been advanced to extend, modify, or reverse the law as it stands, Rule 11 has been violated. *Eastway Constr. Corp.*, 762 F.2d at 254. Sanctions under Rule 11 may be imposed upon an attorney, the attorney's firm, or both. *Calloway v. Marvel Entertainment Group*, 650 F.Supp. 684, 686-88 (S.D.N.Y.1986) (collecting cases), *aff'd in relevant part*, 854 F.2d 1452 (2d Cir.1988); Fed.R.Civ.P. 11.

In addition to these guidelines on the substance of Rule 11, due process also imposes procedural requirements on the granting of any Rule 11 motion for sanctions. *Sanko S.S. Co. v. Galin*, 835 F.2d 51, 53 (2d Cir.1987); *Oliveri v. Thompson*, 803 F.2d 1265, 1280 (2d Cir.1986), *cert. denied sub nom. County of Suffolk v. Graseck*, 480 U.S. 918 (1987). Specifically, a court must grant the party against whom sanctions are sought notice and an opportunity to be heard before the decision to impose sanctions is made. *Galin*, 835 F.2d at 53.

Remington's objection to personal jurisdiction provides the basis for sanctions. As a rudimentary review of the facts discloses, there are at least two uncontroverted and uncontrovertible bases for haling Remington into court in New York. The only conclusion that can be reached after review of this motion is that Remington's counsel filed this motion without conducting an objectively reasonable inquiry into the facts available to him that conclusively disprove his claim. That is to say, counsel did not read the asset purchase agreement drafted by his own law firm, which he appended to his motion to dismiss. There was no way that Remington could win this motion, and a review of the documents attached to its own motion would have revealed that fact. Moreover, Remington has made no argument which in any way could be construed as an attempt to challenge or modify existing law on personal jurisdiction. In such circumstances sanctions should be imposed on the attorney whose signed the offending motion, Carl F. Goodman, and the law firm of which he is a member, Jones, Day, Reavis & Pogue (Jones, Day). *Thompson*, 803 F.2d at 1280. Goodman and Jones, Day will be jointly and severally liable for full payment of whatever sanctions are finally imposed.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 11
Not Reported in F.Supp., 1988 WL 132868 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

*10 The award of sanctions for Remington's frivolous motion does not offend due process because the firm's counsel had notice of plaintiffs' motion and an opportunity to respond. Moreover, Remington's counsel will have another opportunity to be heard, when the exact amount of sanctions is determined. Therefore, neither Goodman nor Jones, Day has been deprived of property without due process of law, and neither will they be so deprived in the future. See Fuentes v. Shevin, 407 U.S. 67, 80-82 (1972) (Fourteenth Amendment) (collecting cases).

Other courts facing frivolous motions to dismiss for lack of *in personam* jurisdiction have awarded plaintiffs the reasonable costs of defending the motion, including attorneys' fees. Ortho Pharmaceutical Corp. v. Sona Distribs., Inc., 117 F.R.D. 170 (S.D.Fla.1987), aff'd, 847 F.2d 1512 (11th Cir.1988). That is consistent with the rule in this circuit. Eastway Constr. Corp, 762 F.2d at 254. However, as in all cases where damages are awarded to one party, plaintiffs here have a duty to mitigate damages. Nassau-Suffolk Ice Cream, Inc. v. Integrated Resources, Inc., 114 F.R.D. 684, 692 (S.D.N.Y.1987) (collecting cases). Therefore, "while a client ... may surely select the grand style for [its] representation, the sanction will be less than the attorney's fee when, in a 'comparatively simple matter, there was an excess of professional services.' " Integrated Resources, 114 F.R.D. at 692, quoting Marine Midland Bank, N.A. v. Goyak, 84 Civ. 1204 (EW) (S.D.N.Y. July 12, 1984).

Although the motion to dismiss for lack of jurisdiction was frivolous, and thus requires the imposition of sanctions, it should have been easy to rebut. Therefore, fees for the defense of this motion should be modest. With this in mind, by January 23, 1989, plaintiffs' counsel shall file and serve documentary and specific proof of the costs generated by defending the motion to dismiss for lack of personal jurisdiction, as well as a proposal for the appropriate nature and amount of sanctions to be imposed. Goodman or Jones, Day will then have until February 13, 1989, to file any response that they deem appropriate, to which plaintiffs' counsel may reply by February 27, 1989. Any party wishing oral argument should so indicate in its submission.

FN1. Leventhal will receive $75,000.00 in each of the first two years, and $200,000.00 in each of the last three; and Old Franzus will receive $50,000.00 in each of the first two years, and $100,000.00 in each of the last three.

FN2. The memorandum explained that on the closing date, Old Franzus had $294,699.00 more in liabilities than assets; that $650,546.00 of Old Franzus' accounts past due for more than 90 days were uncollectible; that Old Franzus' inventory was worth $289,501.00 less than represented in the closing document; that Old Franzus' accounts payable were $122,129.00 higher than reported at closing; and that $39,974.00 of Old Franzus' current accounts receivable were uncollectible. While the memorandum thus detailed only $1,396,849.00 of the shortfall, New Franzus's memorandum nevertheless concluded that the shortfall totaled $1,402,989.00.

FN3. Specifically, the complaint

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-03071-LLS   Document 8-13   Filed 04/19/2007   Page 13 of 14

Not Reported in F.Supp.                                                                         Page 12
Not Reported in F.Supp., 1988 WL 132868 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

seeks: (1) damages for defendants' alleged anticipatory breach of the asset purchase agreement; (2) a declaration (a) that the shortfall calculations are inaccurate, and (b) that the asset purchase agreement permits Old Franzus to sue its debtors to collect the receivables that New Franzus claims are uncollectible; (3) back rent on New Franzus' New York office space allegedly due to Old Franzus and Marine; (4) an order directing New Franzus to pay the monthly rent in the future to Marine; (5) reimbursement of $35,000 for expenses allegedly paid by Old Franzus at the request of New Franzus; (6)(a) $19,500.00 to compensate Leventhal for New Franzus' alleged refusal to reimburse him for his out-of-pocket expenses, and (b) an order directing New Franzus to pay Leventhal's expenses for the remainder of his employment; (7) damages for New Franzus' alleged breach of the employment agreement and Remington's tortious interference with the agreement; (8)(a) damages for Remington's unfair competition with New Franzus, which has caused New Franzus to lose profits and breach its profit sharing agreement with Leventhal, thereby reducing Leventhal's compensation under the employment agreement; and (b) an order directing (i) Remington to stop competing unfairly with New Franzus, and (ii) New Franzus to stop breaching its contract with Leventhal.

FN4. The asset purchase agreement is also included in plaintiffs' papers in opposition to the motion (Affidavit of Stuart Leventhal Exhibit B).

FN5. Both defendants move to dismiss these claims. However, the complaint specifically alleges that Remington alone tortiously interfered with the contract. Therefore, New Franzus' motion to dismiss these claims is denied.

FN6. Remington also moves to dismiss the tortious interference claims, asserting that Remington, by virtue of its affiliation with New Franzus, is permitted to interfere with Leventhal's employment agreement. However, plaintiff provides no factual or legal support for its position, and therefore its assertion need not be considered.

FN7. Remington also moves to dismiss or compel arbitration on these grounds. However, as Remington is not a party to the agreement, and has made no showing that it has standing to prosecute such an action, its motion is denied.

FN8. Even if the contract was intended to require Leventhal to first seek an amicable resolution before he sued New Franzus, an agreement to seek an amicable resolution in the future would be little more than an agreement to agree, and thus would be unenforceable. *DeVecchi v. DeVecchi*, 34 A.D.2d 790, 311 N.Y.S.2d 530 (N.Y.App.Div.1970); *see Joseph Martin Jr., Delicatessen, Inc. v. Schumacher*, 52 N.Y.2d 105, 436 N.Y.S.2d 247, 417 N.E.2d 541 (1981).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                          Page 13
Not Reported in F.Supp., 1988 WL 132868 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

> FN9. Defendants style their motion as a motion to dismiss for failure to properly plead. As seen above, the anticipatory breach, declaratory judgment, and tortious interference claims are legally cognizable, and therefore, defendants' motion to dismiss these claims is denied. See *supra.* pp. 9-21. Moreover, defendants do not explain why they believe that the unfair competition claim is insufficient. Accordingly, the motion to dismiss that claim is also denied.
> In seeking to dismiss the remaining claims, defendants introduce the employment agreement in order to prove that the complaint is frivolous. Consideration of these documents transforms defendants' motion into one for summary judgment. Fed.R.Civ.P. 12(b); 56. Finally, the motion for summary judgment of the rental claims is considered *infra.* at pp. 22-23.

> FN10. Plaintiffs have not filed a statement of facts not in material dispute. That, in and of itself is sufficient to deny the motion. Fed.R.Civ.P. 83; S.D.N.Y.Civ.R. 3. However, the motion will be considered on its merits.

S.D.N.Y.,1988.
Leventhal v. Franzus Co., Inc.
Not Reported in F.Supp., 1988 WL 132868 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.