Alan J. Sorkowitz (AS-0268)
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
(212) 839-5300

Attorneys for Plaintiff
Railroad Insurance Underwriters

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

RAILROAD INSURANCE UNDERWRITERS,

      Plaintiff,

  - against -

CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON; EXCESS INSURANCE COMPANY
LIMITED; and HARPER INSURANCE LIMITED,

      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action No. 07-CV-3071
(LLS) (RLE)

[Electronically Filed May 15, 2007]

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
## MOTION FOR AN ORDER DISMISSING THE LITIGATION AND COMPELLING
## ARBITRATION

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ........................................................................................2

ARGUMENT.........................................................................................................4

I.    THE ARBITRATION CLAUSE IN THE REINSURANCE CONTRACT
IS NARROW, AND THE REINSURERS MUST THEREFORE SHOW
THAT THIS CASE INVOLVES A DISPUTE CONCERNING
"INTERPRETATION" OF THE CONTRACT........................................................4

II.    THIS CASE PRESENTS A DISPUTE OVER PAYMENT, AND NOT
OVER "INTERPRETATION" OF THE REINSURANCE CONTRACT.............7

III.    IN ANY EVENT, THE SO-CALLED "INTERPRETATION" ISSUES
RAISED BY THE REINSURERS ARE A SHAM..............................................11

    A.    The Access to Records Issue......................................................12

    B.    The Insolvency Issue................................................................13

IV.    THE COMPLAINT'S REQUEST FOR ANCILLARY INJUNCTIVE
RELIEF DOES NOT CREATE AN ISSUE OF INTERPRETATION.................15

V.    THE ACTION SHOULD NOT BE DISMISSED UNDER ANY
CIRCUMSTANCES. ...............................................................................15

CONCLUSION.....................................................................................................17

i

# TABLE OF AUTHORITIES

## CASES

AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 106 S. Ct. 1415 (1986)............7

Argonaut Ins. Co. v. Travelers Ins. Co., 295 A.D.2d 235, 744 N.Y.S.2d 24 (1st Dep't 2002) ......................................................................................................................5

Bedroc Contracting L.L.C. v. Mason Tenders Dist. Council of Greater NY and Long Island, No. 06 Civ. 6399(RMB), 2006 WL 3057311 (S.D.N.Y. Oct. 25, 2006)................7

Breed v. Ins. Co. of North Am., 46 N.Y.2d 351 (N.Y. 1978)........................................................13

E*Trade Fin. Corp. v. Deutsche Bank AG, 420 F.Supp.2d 273 (S.D.N.Y. 2006) .........................6

Fabry's S.R.L. v. IFT Int'l, Inc., No. 02 Civ. 9855(SAS), 2003 WL 21203405 (S.D.N.Y. May 21, 2003)........................................................................................5, 7, 8, 11

Gerling Global Reins. Corp. v. Home Ins. Co., 302 A.D.2d 118, 752 N.Y.S.2d 611 (1st Dep't 2002)............................................................................................................5, 11

JLM Indus. Inc. v. Stolt-Nielsen SA, 387 F.3d 163 (2d Cir. 2004) ..............................................5

Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218 (2d Cir. 2001) .................................................................................................................4, 5, 7, 8

Magellan Reins. Co. Ltd. v. New Hampshire Ins. Co., No. 1017890/05, 2005 WL 1173903 (N.Y. Sup. Mar. 15, 2005) .....................................................................8, 11

Manos v. Geissler, 321 F.Supp.2d 588 (S.D.N.Y. 2004)..............................................................7

In re Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. GE Betz, Inc., 13 A.D.3d 122, 786 N.Y.S.2d 54 (1st Dep't 2004).............................................................................................5

New Hampshire Ins. Co. v. Canali Reins. Co. Ltd., No.03Civ.8889LTSDCF, 2004 WL 769775 (S.D.N.Y. Apr. 12, 2004)...................................................................................5, 6

PAS-EBS v. Group Health, Inc., 442 F.Supp.937 (S.D.N.Y. 1977)..............................................7

**STATUTES**

9 U.S.C. § 3 (2007) ...................................................................................................................16

**SECONDARY SOURCES**

3 Leitner-Simpson-Bjorkman, <u>Law and Practice of Insurance Coverage Litigation,</u>
§41:34 (2007)............................................................................................................. 9-10

## PRELIMINARY STATEMENT

Plaintiff Railroad Insurance Underwriters (hereinafter "RIU") submits this memorandum of law in opposition to the motion of defendants Certain Underwriters at Lloyd's of London, Excess Insurance Company Limited, and Harper Insurance Limited (collectively, the "Reinsurers") for an order dismissing the litigation and compelling arbitration.

RIU brought this action in the New York State courts against the Reinsurers due to their refusal to make payment to RIU of over $2 million due under an unambiguous, written reinsurance contract. Rather than attempt to defend on the merits, the Reinsurers removed the action to this Court and immediately filed the present motion to compel arbitration. The reinsurance contract, however, contains only a narrow arbitration clause, requiring only that disputes *"as to the interpretation"* of the contract be submitted to arbitration. The reinsurance contract also contains a service of suit clause specifically providing that if a dispute relates not to interpretation but to "the *failure of Reinsurers hereon to pay* any amount claimed to be due hereunder," the case shall be heard in court. ("Reinsurers hereon … will submit to the jurisdiction of any Court of competent jurisdiction within the United States.")

The present dispute is a payment dispute of the type addressed in the service of suit clause, not an "interpretation" dispute of the type addressed by the arbitration clause. RIU's Complaint sets forth a simple claim for payment based on the Reinsurers' unexplained failure to meet their contractual obligations. It raises no issue of "interpretation."

While the Reinsurers raise two issues in their motion concerning the insolvency of one of the RIU members, Reliance Insurance Company, it is clear, and RIU will show herein, that (a) these issues *have nothing to do with RIU's claim for payment which is the subject of the current lawsuit,* and (b) in any event, the two issues do not raise any *bona fide* questions relating to the "interpretation" of the reinsurance contract.

Therefore, the Reinsurers' motion is without merit, and this Court should proceed to hear this case.

## STATEMENT OF FACTS

RIU is an unincorporated association, organized pursuant to a Constitution adopted October 2, 1956. It has its principal place of business in New York County. RIU consists of insurance companies that joined together to issue insurance policies to railroads, for various coverages and limits of liability. (Cplt., ¶2).[1]

RIU and the Reinsurers entered into a Quota Share Treaty (hereinafter, the "Reinsurance Contract") effective November 30, 1963, whereby the Reinsurers agreed to reinsure, *inter alia*, 20.5% of 20% RIU's liability under "casualty" (i.e., liability) insurance policies issued to railroads. The Reinsurance Contract was renewed annually through November 30, 1969. (Cplt., ¶¶8, 10). (A copy of the Reinsurance Contract is annexed as Exhibit A to the O'Donnell Cert.)

Over the course of several years, RIU has expended millions of dollars through the payment of claims and/or settlement of disputes arising under the policies, and indeed continues to do so to this day as part of a "runoff" process whereby its obligations under the policies are adjusted and gradually extinguished. (Cplt., ¶11).

RIU's approach to honoring its obligations under the Reinsurance Contract has not been reciprocated by the Reinsurers. RIU has paid sums to its policyholders, billed the Reinsurers for their share of the losses, and complied in all respects with the Reinsurance Contract. Yet, the Reinsurers have failed to make payment to RIU for their share of the losses, in plain violation of the Reinsurance Contract. The Reinsurers' share of the liability now exceeds $2 million and continues to grow as RIU pays sums. (Cplt., ¶¶12-17).

---

[1] A copy of the Complaint is annexed as Exhibit B to the Certification of Brian E. O'Donnell, submitted in support of the Reinsurers' motion and dated April 19, 2007 ("O'Donnell Cert.").

On February 22, 2007, RIU sued the Reinsurers for payment under the Reinsurance Contract by filing a Summons and Complaint in the Supreme Court of the State of New York, County of New York. That forum was the one chosen by RIU pursuant to the Reinsurance Contract's service of suit clause, which, as previously noted, requires the Reinsurers to "submit to the jurisdiction of any Court of competent jurisdiction within the United States" at the request of RIU in the event of a dispute concerning "the failure of Reinsurers hereon to pay any amount claimed to be due hereunder." (Reinsurance Contract, Article 16).

On April 16, 2007, the Reinsurers removed the action to this federal court.

On April 19, 2007, the Reinsurers sought to change the forum yet again, filing the instant motion to dismiss the action in favor of arbitration. The Reinsurers have conceived two issues, discussed more fully below, in an apparent attempt to bring this dispute within the Reinsurance Contract's arbitration clause. Both issues center on the fact that one of the RIU member companies, Reliance Insurance Company ("Reliance"), is the subject of insolvency proceedings in the Commonwealth of Pennsylvania.

Reliance had an interest in the RIU insurance policies of approximately one percent for four of the six years in question in this case, and zero interest in the two other years. (See Exhibit C to the O'Donnell Cert.)

3

**ARGUMENT**

**I.     THE ARBITRATION CLAUSE IN THE REINSURANCE CONTRACT IS
        NARROW, AND THE REINSURERS MUST THEREFORE SHOW THAT THIS
        CASE INVOLVES A DISPUTE CONCERNING "INTERPRETATION" OF THE
        CONTRACT.**

The Reinsurance Contract mandates arbitration for differences of opinion regarding the

*interpretation* of its terms.  In relevant part, the agreement states as follows:

> As a precedent to any right to action hereunder, if irreconcilable
> differences of opinion should arise as to the *interpretation of this
> Contract*, it is hereby mutually agreed that such differences shall
> be submitted to arbitration.

(Reinsurance Contract, Article 13) (emphasis added).

The Second Circuit has established a three-part test in determining whether a dispute falls

within the scope of an arbitration clause.  Louis Dreyfus Negoce S.A. v. Blystad Shipping &

Trading Inc., 252 F.3d 218, 224 (2nd Cir. 2001).  First, the court must classify the arbitration

clause as either broad or narrow.  Id.  Second, if the arbitration clause is narrow, "the court must

determine whether the dispute is over an issue that is on its face within the purview of the clause,

or over a collateral issue that is somehow connected to the main agreement that contains the

arbitration clause."  Id. (internal citations and quotations omitted).  "Where the arbitration clause

is narrow, a collateral matter will generally be ruled beyond its purview."  Id.  Third, if the

arbitration clause is broad, "there arises a presumption of arbitrability and arbitration of even a

collateral matter will be ordered if the claim alleged implicates issues of contract construction or

the parties' rights and obligations under it."  Id. (internal citations and quotations omitted).

In the dispute at hand, the arbitration clause is "narrow" under the first prong of the Louis

Dreyfus analysis, because it only covers disputes relating to the "interpretation" of the

Reinsurance Contract.  In contrast to the classic broad arbitration clause which covers "all

4

disputes arising out of or relating to this agreement," or similar language,[2] the Reinsurance

Contract's arbitration clause only applies to the small subset of potential disputes which involve

"interpretation" of the agreement.  See Fabry's S.R.L. v. IFT Int'l, Inc., No. 02 Civ. 9855(SAS),

2003 WL 21203405, at *5 (S.D.N.Y. May 21, 2003) (holding that an arbitration clause applying

only to "any dispute arising from the interpretation of this agreement" was a "narrow clause")[3];

New Hampshire Ins. Co. v. Canali Reins. Co. Ltd., No.03Civ.8889LTSDCF, 2004 WL 769775,

at *3 (S.D.N.Y. Apr. 12, 2004) (same); In re Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. GE

Betz, Inc., 13 A.D.3d 122, 786 N.Y.S.2d 54 (1st Dep't 2004) (same); Argonaut Ins. Co. v.

Travelers Ins. Co., 295 A.D.2d 235, 235-36, 744 N.Y.S.2d 24, 25 (1st Dep't 2002) (same);

Gerling Global Reins. Corp. v. Home Ins. Co., 302 A.D.2d 118, 124, 752 N.Y.S.2d 611, 616 (1st

Dep't 2002) (same).

Thus, under the second prong of the Louis Dreyfus holding, this Court must determine

whether the dispute presented is an "interpretation" dispute falling within the letter of the

arbitration clause (in which case the dispute would be referable to arbitration) or whether it

concerns collateral issues not falling within the arbitration clause's scope but rather simply

"somehow connected to the main agreement" (in which case the dispute would be not be

referable to arbitration).  252 F.3d at 224.

This dichotomy is underscored in the present case due to the Reinsurance Contract's

inclusion of a service of suit clause.  That clause states in part as follows:

> [I]n the event of the failure of the Reinsurers hereon to pay any
> amount claimed to be due hereunder, Reinsurers…will submit to
> the jurisdiction of any Court of competent jurisdiction within the
> United States and will comply with all requirements necessary to

---

[2] In JLM Industries, Inc. v. Stolt-Nielsen SA, the court held that an arbitration clause providing that "'[a]ny and all differences and disputes of whatsoever nature arising out of this Charter' are subject to arbitration" was a "broad" arbitration clause.  387 F.3d 163, 172 (2nd Cir. 2004).
[3] Copies of all unreported decisions relied upon in this Memorandum are submitted in the accompanying Appendix of Unreported Decisions.

> give such Court jurisdiction and all matters arising hereunder, shall
> be determined in accordance with the law and practices of such
> Court.

(Reinsurance Contract, Article 16).

This service of suit clause reinforces the parties' intent that, while disputes relating to "interpretation" of the Reinsurance Contract are to be arbitrated, a court should decide those disputes concerning the Reinsurers' simple failure to make payment to RIU. See E*Trade Fin. Corp. v. Deutsche Bank AG, 420 F.Supp.2d 273, 285 (S.D.N.Y. 2006) (holding that "[w]hen a contract contains both a broad disputes provision permitting lawsuits and also an arbitration requirement set forth in one narrow context, courts routinely limit the arbitration requirement to disputes arising squarely in that narrow context").

A similar circumstance arose in New Hampshire Ins. Co. where a reinsurance agreement encompassed both an arbitration clause covering disputes arising out of the "interpretation" of the agreement and a service of suit clause providing that the parties would submit to the jurisdiction of a court in the event that there was a dispute regarding payment of amounts due. 2004 WL 769775, at *3. Both of those clauses were almost identical to the arbitration and service of suit clauses in the Reinsurance Contract. In holding that the arbitration clause only covered disputes arising out of the interpretation of the reinsurance agreement, the court stated that the fact that the parties included a separate service of suit clause confirmed the narrow reading of the arbitration clause. Id. Accordingly, the court opined that the service of suit clause "clearly show[s] that the parties contemplated disputes that would not fall within the scope of the arbitration clause." Id.

In sum, where an arbitration clause is narrow, as here, and especially where a service of suit clause underscores the narrow nature of the arbitration clause, there arises a serious issue as to whether the parties agreed to arbitrate any given dispute. This issue must be resolved by

6

determining whether the particular dispute at issue falls within the ambit of the arbitration clause. "Although federal policy favors arbitration, however, it is a matter of consent under the FAA." Fabry's, 2003 WL 21203405, at *4, citing and quoting Louis Dreyfus, 252 F.3d at 224 and AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 106 S. Ct. 1415 (1986).[4] "A party cannot be compelled to arbitrate a dispute that she did not agree to submit to arbitration." Manos v. Geissler, 321 F.Supp.2d 588, 592 (S.D.N.Y. 2004). The plain language of the Reinsurance Contract's arbitration clause shows unequivocally that RIU never agreed to arbitrate any disputes extending beyond "interpretation" of the Reinsurance Contract.

## II.    THIS CASE PRESENTS A DISPUTE OVER PAYMENT, AND NOT OVER "INTERPRETATION" OF THE REINSURANCE CONTRACT.

There can be no doubt that RIU's claim in the present case is one for payment, and not one relating to "interpretation" of the Reinsurance Contract.

A review of RIU's claim as set forth in the Complaint makes this clear, as the case set forth is one for collection of a debt. The six-page Complaint simply describes the parties (¶¶2-6), discusses the Reinsurance Contract without offering any interpretations of its terms and conditions (¶¶7-10), and describes the overdue balances due thereunder from the Reinsurers

---

[4]    The Reinsurers' reliance on PAS-EBS v. Group Health, Inc., 442 F.Supp.937 (S.D.N.Y. 1977), is rather forlorn. PAS-EBS was decided more than two decades before Louis Dreyfus and all of the other now-established precedents governing the scope of arbitration clauses in this circuit. More importantly, PAS-EBS is clearly distinguishable, because the arbitration clause at issue therein was substantially different than the one in the Reinsurance Contract here. The Reinsurance Contract only mandates arbitration for differences of opinion regarding the "interpretation" of the agreement. In PAS-EBS, the arbitration clause provided for arbitration of any dispute arising between the parties "concerning the interpretation *or application* of the terms and provisions" of the agreement. 442 F. Supp. at 939 (emphasis added). The PAS-EBS clause thus had a far wider scope and could arguably encompass almost any contractual dispute, in contrast to the narrow interpretation-only clause in the instant case. See Bedroc Contracting L.L.C. v. Mason Tenders Dist. Council of Greater NY and Long Island, No. 06 Civ. 6399(RMB), 2006 WL 3057311, at *3 (S.D.N.Y. Oct. 25, 2006) (holding that an arbibitraiton clause covering "disputes arising between the parties involving questions of interpretation or application of any clause of this Agreement" was a "broad arbitration clause").

(¶¶11-18). RIU has not put the "interpretation" of the Reinsurance Contract in issue in any way, shape, or form.

Thus, this case is essentially indistinguishable from Fabry's, 2003 WL 21203405. There, the court was faced with an agency agreement that contained a clause that mandated arbitration if "the parties have been unable to resolve by mediation any dispute arising from the interpretation of this agreement." Id. at *2. The court found that the arbitration clause was narrow because it "only refers to the interpretation of this agreement," thereby limiting arbitration "to a particular subset of disputes." Id. at * 5 (internal quotations omitted). The court then found that the dispute presented, which involved a failure by the agent to remit payments to the principal, on its face was not within the purview of the arbitration clause. Id. Thus, the court refused to compel arbitration because the failure to remit payments was not an issue that involved the "interpretation" of the agreement. Id.; accord Magellan Reins. Co. Ltd. v. New Hampshire Ins. Co., No. 1017890/05, 2005 WL 1173903, at *2 (N.Y. Sup. Mar. 15, 2005) ("The question of whether petitioner owes money is not an interpretation of the reinsurance contract.").

In their motion, the Reinsurers describe two issues, both stemming from the fact that one RIU member, Reliance, is insolvent, which the Reinsurers claim relate to the "interpretation" of the Reinsurance Contract. However, these issues have nothing to do with RIU's claim for payment. In the parlance of the Louis Dreyfus decision, they are separate "collateral issue[s]" that simply happen to be "connected to the main agreement." 252 F.3d at 224.

**The Access To Records Issue** – The Reinsurers contend that in 2005, RIU declined to allow them to review documents concerning the manner in which the RIU members were dealing with the insolvency of Reliance, one of the members having approximately a one percent participation in RIU. The Reinsurers further claim that this was a violation of the Reinsurance Contract's access to records clause, which provides that "[t]he Reinsurers shall have the right (by

8

their duly qualified representative) at all reasonable times to inspect all books and documents connected with the business coming within the scope hereof." (Reinsurance Contract, Article 10). Further, the Reinsurers claim that their argument requires the Court to interpret the access to records clause.

What do the Reinsurers' protestations about the access to records clause have to do with RIU's claim for collection of the long-overdue debt for over $2 million in payments under the Reinsurance Contract, which is the claim at issue in this case? Nothing. It is absolutely critical to note that *the Reinsurers do not contend that the alleged "violation" of the access to records clause excuses them from payment*:

-- None of the letters sent to RIU by the Reinsurers' counsel concerning the request for documents (O'Donnell Cert., Exhs. C, E, G) states that the Reinsurers need not or will not pay if they do not receive the requested documents;

-- The Reinsurers' memorandum of law respecting the present motion nowhere argues that RIU's "failure" to provide records discharges the obligation to make payments under the Reinsurance Contract;

-- Neither the access to records clause nor anything else in the Reinsurance Contract states that the Reinsurers' duty to pay losses is conditional on their receipt of records from RIU, whether those documents relate to the business reinsured or the insolvency of one of the RIU participants; and

-- Under the most basic principles of equity, the "failure" to provide records concerning the insolvency of a single one percent participant in RIU would not excuse the Reinsurers from paying over $2 million in losses that are undisputedly due and owing, for this would create a remedy entirely disproportional to the alleged breach. See 3 Leitner-Simpson-Bjorkman, Law

9

and Practice of Insurance Coverage Litigation, §41:34 (2007) (the materiality of the breach will dictate the appropriate remedy for an alleged violation of an access to records clause).

In sum, the Reinsurers contend that they may have a claim against RIU for breach of the access to records clause, depending upon how that clause is interpreted. That is all well and good; the Reinsurers can attempt to vindicate their purported rights in arbitration or in court. But this has nothing to do with the claim for payment that is the subject of the current lawsuit. The access to records point is not part of RIU's claim for payment, not a defense to that claim for the Reinsurers, and is entirely separate. The fact remains that the claim for payment has nothing to do with the "interpretation" of the Reinsurance Contract and is thus covered not by the arbitration clause but by the service of suit clause.

**The Insolvency Issue** – Second, the Reinsurers contend that the insolvency of Reliance raises an issue under the Reinsurance Contract's insolvency clause. Again, the Reinsurers do not even contend that this "issue" relieves them of the duty to pay losses under the Reinsurance Contract. On the contrary, they recognize that the second paragraph of the insolvency clause, dealing with the insolvency of one RIU member, requires that even where there is such an insolvency, "reinsurance under this Contract shall be payable by the Reinsurers directly to the Reassured [i.e., RIU]." (Reinsurance Contract, Article 17).

Thus, the arguments about Reliance's insolvency have nothing to do with RIU's claim for payment; they are neither part of that claim nor a defense thereto. The *only* significance of the Reliance insolvency is that the Reinsurers are concerned that "payments made to RIU may not ... extinguish Reinsurers' liability under the [Reinsurance Contract] to the estate of Reliance." (Mem. of Law at 4). Again, that is all well and good; the Reinsurers may have to address issues arising out of the Reliance insolvency proceedings in Pennsylvania. But that is not a defense to,

10

and really has nothing to do with, RIU's claim for payment of a debt due and owing under the Reinsurance Contract.

At the very most, the Reinsurers are arguing that they should not be held responsible to RIU for Reliance's small share of the losses (despite the Reinsurance Contract's explicit language to the contrary), out of concern for possible duplicative liability to the Reliance estate. This could conceivably impact the *amount* which RIU recovers on its claim for payment. But a dispute over the amount owed is still part of a non-arbitrable claim for payment, rather than an arbitrable dispute over "interpretation." See Fabry's, 2003 WL 21203405, at *6 (defendant's dispute "concerning the amount of money it owes" is not an "interpretation" issue under a narrow arbitration clause); Magellan Reins. Co. Ltd., 2005 WL 1173903, at *2 ("The question of whether petitioner owes money is not an interpretation of the reinsurance contract; rather, it is a factual controversy concerning respondent's calculation of the amount in dispute."); Gerling Global Reins. Corp. v. Home Ins. Co., 302 A.D.2d 118, 126, 752 N.Y.S.2d 611, 618 (1st Dep't 2002) (dispute over "an error in billing and payment" was not arbitrable under a narrow clause limited to "interpretation" disputes).

In the ultimate analysis, the Reinsurers have identified alleged "interpretation" issues that they may wish to pursue in an arbitration or lawsuit of their own, but they have not shown that these alleged "interpretation" disputes have anything whatsoever to do with the claim made in this case, i.e., RIU's simple claim for payment under the Reinsurance Contract.

## III.    IN ANY EVENT, THE SO-CALLED "INTERPRETATION" ISSUES RAISED BY THE REINSURERS ARE A SHAM.

Even if the issues raised by the Reinsurers concerning the Reliance insolvency were somehow deemed to give rise to an "interpretation" dispute falling within the arbitration clause,

the Reinsurers' motion should still be denied, because the issues raised by the Reinsurers are a sham. There is no *bona fide* issue of "interpretation" in this case within the meaning of the arbitration clause.

### A.    The Access to Records Issue

The Reinsurers argue that RIU refused to provide information to them regarding Reliance's participation in the RIU pools and the participation of other pool members who have supposedly assumed Reliance's share of liability. Specifically, the Reinsurers claim they were denied information "regarding RIU pool member participation percentages and any approval by RIU's Executive Committee of the pool members' assumption of liability for Reliance's (or any other insolvents') share of loss and expense amounts due under the RIU policies." (Mem. of Law at 12). The Reinsurers argue that they have a contractual right of access to these records under the Reinsurance Contract's access to records clause. (Reinsurance Contract, Article 10).

The access to records clause, however, provides Reinsurers with the right "to inspect all books and documents *connected with the business coming within the scope hereof.*" (Reinsurance Contract, Article 10) (emphasis added). This clause means exactly what it says: Reinsurers are entitled to access to the records regarding the "business." "Business" is a term of art used throughout the Reinsurance Contract and has a specialized meaning. Several articles of the Reinsurance Contract describe the "business" as *the underlying direct insurance policies issued by RIU to insureds.* Thus,

-- Article 1 refers to the "business" in the sense of the underlying casualty and other risks insured by RIU;

-- Article 3 refers to the "business" as the underlying insurance policies written by RIU; and

12

-- Articles 4, 7, and 8 refer to the "business" in the same way.

The access to records clause grants the Reinsurers the right to review records concerning the underlying insurance business, so that they can see what they are reinsuring, check on the progress of premiums and claims, and verify accounts rendered by RIU. It does *not* grant the Reinsurers the right to review records concerning the internal workings of the RIU pool. If it did, it would say so. See <u>Breed v. Ins. Co. of North Am.</u>, 46 N.Y.2d 351, 355 (N.Y. 1978) (the words of an insurance contract must be given their plain and ordinary meaning).

**B.    The Insolvency Issue**

The Reinsurers invent another supposed "interpretation" issue, regarding the insolvency clause of the Reinsurance Contract. (Reinsurance Contract, Article 17). Here, the Reinsurers argue that there is a question as to whether the insolvency clause requires them to pay Reliance's share of the reinsurance to RIU, RIU's manager, or Reliance's liquidator. (Mem. of Law at 14-16). The truth, however, is that there is no issue at all.

The insolvency clause could not be more clear and requires no interpretation. The first paragraph of the clause deals with the insolvency of "the Reassured," i.e., RIU. It is thus utterly inapplicable and irrelevant because RIU is not insolvent.[5]

---

[5]  The Reinsurers try to create the impression that there is ambiguity as to whether RIU is really "the Reassured." Shockingly, the Reinsurers attempt to do this by misquoting the Reinsurance Contract in their motion. According to the Reinsurers, the Preamble of the Reinsurance Contract defines "the Reassured" as follows: "T.W. Adams, Manager, or his successor or successors in office ... as Manager of the Railroad Insurance Underwriters (hereinafter called the 'Reassured'), for and on behalf of the Member Companies of the Reassured (including their affiliated and or subsidiary Companies) as their respective interests may appear." (Mem. of Law at 15).

This creates the impression that "the Reassured" could be Mr. Adams, RIU itself, or the RIU member companies. Note the mischievous ellipsis, however. The Reinsurers omitted a parenthetical that makes the definition of the term "Reassured" crystal clear. Contrary to the Reinsurers' misquote, the applicable passage actually reads as follows: "T.W. Adams, Manager, or his successor or successors in office (*hereinafter called the 'Management'*) as Manager of the Railroad Insurance Underwriters (hereinafter called the 'Reassured'), for and on behalf of the Member Companies of the Reassured (including their affiliated and or subsidiary Companies) as their respective interests may appear."  (Reinsurance Contract, Preamble, as reproduced in O'Donnell Cert., Exh. A) (emphasis added).

13

The second and final paragraph of the insolvency clause states as follows:

> In any case in which under the terms of the policy and/or contract reinsured the liability of the insolvent member to its Insured is assumed, with the consent of the Insured, by the other members of the Reassured *reinsurance under this Contract shall be payable by the Reinsurers directly to the Reassured.*[6]

(Reinsurance Contract, Article 17) (emphasis added). As admitted by the Reinsurers in their motion, this paragraph clearly directs the Reinsurers to make payment "directly to the Reassured," not the Reassured's member companies or Reliance's liquidator or any other person. (Mem. of Law at 15). Since, as has been demonstrated, "the Reassured" is RIU, there is no ambiguity and no issue. The Reinsurers are supposed to make payment to RIU.

Further still, the Reinsurers, by their own admission, never informed RIU until April 2005 that they felt there was a problem or uncertainty as to the issue of to whom the Reliance percentage was to be paid. (Mem. of Law at 3). Yet, Reliance has been in insolvency proceedings since 2001. (See the narrative posted on the Pennsylvania Insurance Department's website at http://www.ins.state.pa.us/ins/cwp/view.asp?a=1285&q=539675.) The Reinsurers' arguments concerning Reliance's insolvency were thus waived many years ago.

---

When one adds back in the parenthetical that the Reinsurers removed in their brief, it becomes clear that "the Reassured" is RIU. "The Reassured" is not T.W. Adams or his successors; they are "the Management". "The Reassured" is not the member companies of RIU; they are "the Member Companies." There is no ambiguity.

An "interpretation issue" cannot be created by misquoting the Reinsurance Contract.

[6] Throughout their motion, the Reinsurers incorrectly quote this clause as stating the "liability of the insolvent member or its Insured" instead of "liability of the insolvent member to its Insured." (Mem. of Law at 14, 15).

14

## IV.    THE COMPLAINT'S REQUEST FOR ANCILLARY INJUNCTIVE RELIEF DOES NOT CREATE AN ISSUE OF INTERPRETATION.

Finally, the Reinsurers argue that an "interpretation" dispute is somehow created by

RIU's request that an injunction be issued ordering the Reinsurers to comply with the

Reinsurance Contract not only now but in the future. This is not a legitimate argument.

The request for injunctive relief merely states one of the two temporal aspects of RIU's

claim for payment – future payments (as opposed to payment for existing losses). As

demonstrated, the claim for payment is within the scope of the service of suit clause and outside

the arbitration clause. The request for injunctive relief simply adds an additional remedy for the

single wrong alleged by RIU – failure of the Reinsurers to pay what they owe under the

Reinsurance Contract.

The injunctive request does not raise any "interpretation" issues; it simply asks the Court

to direct the Reinsurers to abide by the Reinsurance Contract's terms as set forth in writing.

The cases cited by the Reinsurers are inapplicable for two reasons. First, they deal with

plaintiffs who sought *declaratory relief.* While an action for a declaration of rights under a

contract arguably may require the court to interpret the contract, RIU's request for *injunctive*

*relief* does not so require. RIU simply asks the Court to prospectively enforce the Reinsurance

Contract as written. Second, the cases deal with situations in which the defendants had identified

*bona fide* "interpretation" issues. As shown, the Reinsurers have not done this.

## V.    THE ACTION SHOULD NOT BE DISMISSED UNDER ANY CIRCUMSTANCES.

In the unlikely event that the Court finds merit in the Reinsurers' motion, it is respectfully

requested that the action be stayed pending arbitration, rather than dismissed.

15

A stay of the action pending arbitration, not dismissal, is the procedure prescribed by Section 3 of the Federal Arbitration Act ("FAA"), which forms the primary basis for the Reinsurers' motion.  9 U.S.C. § 3 (2007).

Moreover, dismissal would be highly inappropriate here.  The Reinsurers have allowed years to pass in flagrant violation of their duty to make payment under the Reinsurance Contract. When finally hailed into court, they invoked the insolvency of a single RIU member company with a one percent interest in the losses in order to justify making any payment whatsoever towards 100% of their debt.  The Reinsurers' course of conduct indicates that they are willing to go to any length to avoid payment.  It is therefore not difficult to imagine them impeding any arbitration, such as by failing to cooperate in the appointment of a panel, declining to post security for their obligations, or throwing up other procedural roadblocks.  In that event, it would be necessary for RIU to seek relief under the FAA by application to this Court.  The current action should remain in place so that such applications can be made expeditiously.  RIU should not be required to institute a new action (with a concomitant new docket fee, new service of process, and other procedural matters) in order to seek relief for the Reinsurers' failure to go ahead with the arbitration they themselves compelled.

16

## **CONCLUSION**

For the foregoing reasons, the Reinsurers' motion should be denied in all respects.

Dated: New York, New York
      May 15, 2007

                SIDLEY AUSTIN LLP

                By: _____
                      Alan J. Sorkowitz (AS-0268)

                787 Seventh Avenue
                New York, New York  10019
                (212) 839-5300
                Attorneys for Plaintiff

Assisted by:
Michael Grabo
(admitted in New York but not in this Court)

17