Alan J. Sorkowitz (AS-0268)
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
(212) 839-5300

Attorneys for Plaintiff
Railroad Insurance Underwriters

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
RAILROAD INSURANCE UNDERWRITERS,              :
                                              :    Civil Action No. 07-CV-3071
                         Plaintiff,           :    (LLS) (RLE)
                                              :
          - against -                         :
                                              :
CERTAIN UNDERWRITERS AT LLOYD'S,              :
LONDON; EXCESS INSURANCE COMPANY              :
LIMITED; and HARPER INSURANCE LIMITED,        :
                                              :    [Electronically Filed May 15, 2007]
                         Defendants.          :
                                              :
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## APPENDIX OF UNREPORTED DECISIONS CITED IN PLAINTIFF'S
## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR AN
## ORDER DISMISSING THE LITIGATION AND COMPELLING ARBITRATION

Westlaw.

Slip Copy                                                                                Page 1

Slip Copy, 2006 WL 3057311 (S.D.N.Y.)
**(Cite as: Slip Copy)**

**C**
Bedroc Contracting L.L.C. v. Mason Tenders Dist.
Council of Greater New York and Long Island
S.D.N.Y.,2006.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
BEDROC CONTRACTING L.L.C., Plaintiff,
v.
MASON TENDERS DISTRICT COUNCIL OF
GREATER NEW YORK AND LONG ISLAND,
Defendant.
**No. 06 Civ. 6399(RMB).**

Oct. 25, 2006.

*DECISION AND ORDER*
BERMAN, J.

I. Background

**\*1** On or about August 25, 2006, plaintiff Bedroc
Contracting L.L.C. ("Bedroc") filed a complaint
seeking, among other things, a stay of arbitration
currently pending in New York City and scheduled
for November 7, 2006. (Brief in Support of
Plaintiff's Verified Complaint for Injunctive Relief
Seeking a Stay of Arbitration ("Complaint").)

The defendant Mason Tenders District Council of
Greater New York and Long Island ("Mason
Tenders") had initiated the arbitration on or about
June 5, 2006, pursuant to a collective bargaining
agreement between Mason Tenders and Bedroc ("
Agreement"), over failure to make ERISA
contributions to the Mason Tenders Fringe Benefit
Funds. (Defendant's Memorandum of Law in
Opposition to Verified Complaint ("Opposition"),
at 1, 5.) Mason Tenders named (only) Bedroc as a
party to the arbitration and identified two issues:
whether "Bedroc [i]s liable" for the "fringe benefit
liabilities accrued by [Seasons Contracting Corp.]"
and "whether Bedroc and Seasons [a]re the same '
Employer' within the meaning of the Agreement."

(Opposition at 4-5.)

Bedroc claims here that (1) whether Bedroc and
Seasons Contracting Corp. ("Seasons") are the
same "Employer" as defined in the Agreement "is a
determination reserved exclusively to the District
Court," and (2) the subject of the arbitration "
exceeds the scope of the arbitration provision" in
the Agreement. (Complaint at 6; Reply Brief in
Support of Plaintiff's Verified Complaint for
Injunctive Relief Seeking a Stay of Arbitration ("
Reply"), at 4.) Mason Tenders responds to Bedroc's
claims, stating (1) the Agreement cannot "be
construed to exclude from arbitration the issue of
the meaning and/or application of the term '
Employer'," and (2) the issues to be arbitrated "are
covered by the arbitration provision" in the
Agreement. (Opposition at 6, 7.) Mason Tenders
also argues that the Court lacks jurisdiction to
enjoin a labor dispute, citing the Norris-LaGuardia
Act, 29 U.S.C. §§ 101 *et seq.* (Opposition at 12.)

Oral argument was held on October 25, 2006.

II. Subject matter Jurisdiction: Norris-LaGuardia
Act

As a preliminary matter, Mason Tenders' claim that
the Court lacks jurisdiction to stay the arbitration is
without merit. The Norris-LaGuardia Act, 29
U.S.C. §§ 101 *et seq.,* "bars only injunctions that
limit or prohibit concerted labor activity or coercive
conduct between parties to a labor dispute, not
injunctions halting arbitration." *In re Ionosphere
Clubs,* No. 89 Civ. 8250, 1990 U.S. Dist. LEXIS
741, at \*21 (S.D.N.Y. Jan. 25, 1990); *see also
Aeronautical Indus. Dist. Lodge 91 v. United
Techs. Corp.,* 230 F.3d 569, 580 (2d Cir.2000) ("
injunctive relief is permitted under circumstances
that do not implicate the abuses the
[Norris-LaGuardia Act] was enacted to prevent").
The Norris-LaGuardia Act does not impugn upon
the Court's jurisdiction to grant Bedroc's request for

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 3057311 (S.D.N.Y.)
**(Cite as: Slip Copy)**

a stay of the November 7, 2006 arbitration. *See Lexington Childrens Ctr. v. Dist. Council 1707, AFSCME,* No. 04 Civ. 1532, 2004 U.S. Dist. LEXIS 4290, at *27 (S.D.N.Y. Mar. 17, 2004).

### III. Motion to Stay Arbitration-Legal Standard

**\*2** Federal policy requires courts to "construe arbitration clauses as broadly as possible," *Oldroyd v. Elmira Sav. Bank,* 134 F.3d 72, 76 (2d Cir.1998) (internal citations omitted), and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Co.,* 460 U.S. 1, 24-25 (1983); *accord Thyssen, Inc. v. Calypso Shipping Corp.,* 310 F.3d 102, 104-05 (2d Cir.2002) ("there is a strong federal policy favoring arbitration"). A court should not stay arbitration " unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Thomas James Assocs. v. Jameson,* 102 F.3d 60, 65 (2d Cir.1996) (internal citations omitted).

Where a "collective bargaining agreement contains an arbitration clause, there is a presumption of arbitrability," which "flows from the national labor policy favoring arbitration in labor disputes." *Truck Drivers Local Union No. 807 v. Reg'l Imp. & Exp. Trucking Co.,* 944 F.2d 1037, 1043 (2d Cir.1991). Courts should "order arbitration if the arbitration clause is broad and if the party seeking arbitration has made a claim that on its face is governed by the contract." *Associated Brick Mason Contractors, Inc. v. Harrington,* 820 F.2d 31, 35 (2d Cir.1987).

### IV. Analysis

1) Plaintiff's claim that the Court should determine application of the alter ego doctrine is unpersuasive.

Bedroc argues that because Seasons is not a signatory to the Agreement, arbitration cannot proceed "unless a District Court first finds that Seasons and Bedroc are alter ego employers." (Reply at 4.) If Bedroc and Seasons are not alter

egos, Bedroc claims that an arbitrator cannot "bind a non-signatory to each and every provision" of the Agreement and that Seasons "never agreed to be bound to it or arbitrate issues arising under it." (Reply at 4, 6.) Mason Tenders contends that because they named only Bedroc in the arbitration, " there is no dispute that [arbitral] awards can be enforced against companies that are in fact signatory to the contract, such as Bedroc here," and Bedroc and Seasons "are so closely related as to be single employers, alter egos, or predecessor/successors of one another." (Opposition at 1, 8.) If Bedroc and Seasons are " alter egos," defined as "substantially identical" in most respects, they are "bound by each other's collective bargaining agreements," *Natl. Labor Relations Bd. v. G & T Terminal Packaging Co.,* 246 F.3d 103, 118 (2d Cir.2001), and "jointly and severally liable for each other's debts and obligations, including financial obligations under the collective bargaining agreement." *Lihli Fashions Corp. v. Natl. Labor Relations Bd.,* 80 F.3d 743, 748 (2d Cir.1996).

Bedroc's argument is that "the alter ego issue is to be decided by the court, not an arbitrator." *Local Union No. 38, Sheet Metal Workers' Int'l Assn. v. A & M Heating, Air Conditioning, Ventilation & Sheet Metal,* 314 F.Supp.2d 332, 345 (S.D.N.Y.2004); *see also Local Union No. 38, Sheet Metal Workers' Int'l Assn. v. Custom Air Sys., Inc.,* 357 F.3d 266, 268 (2d Cir.2004) ("arbitrability vis a vis a non-signatory is for the district court to decide"). However, that principle does not apply here, because the parties to the arbitration, Bedroc and Mason Tenders, are both signatories to the Agreement and Seasons is not a named respondent in the arbitration. *See Vittoria Corp. v. New York Hotel & Motel Trades Council,* 30 F.Supp.2d 431, 436 (S.D.N.Y.1998) ("[t]he alter ego doctrine is inapplicable here because the Council is seeking to compel arbitration from Vittoria Corporation, not [its alleged alter ego]. Vittoria is a signatory to the [collective bargaining agreement], and thus should be compelled to comply with [the arbitration clause] "); *accord Local Union No. 38, Sheet Metal Workers' Int'l Assn. v. A & M Heating, Air Conditioning, Ventilation & Sheet Metal,* 314 F.Supp.2d at 345 ("an arbitrator may decide the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 3057311 (S.D.N.Y.)
**(Cite as: Slip Copy)**

Page 3

alter ego issue only in a proceeding against a signatory employer and in that proceeding the union may seek damages only against the signatory employer").

**\*3** Mason Tenders' argument that Bedroc and Seasons are alter egos does not go to arbitrability, but instead is a sub-issue of the dispute between Mason Tenders and Bedroc concerning the meaning of "Employer" under the Agreement, which may be decided by the arbitrator. *See Albradco, Inc. v. Bevona,* 982 F.2d 82, 83 (2d Cir.1992) (citing an earlier proceeding in which the district court upheld an arbitrator's finding that an employer had two non-signatory alter egos and "directed [the employer] to pay ... fund contributions to the Union" on behalf of the two alter egos); *National Dev. Co. v. Triad Holding Corp.,* 930 F.2d 253, 255 (2d Cir.1991) (upholding an arbitrator's award, which was based on the arbitrator's finding that a party to the arbitration agreement had a non-signatory alter ego); *American Renaissance Lines, Inc. v. Saxis S.S. Co.,* 502 F.2d 674, 677 (2d Cir.1974) (reversing a district court decision that " contradicted the arbitrators' finding" regarding the alter ego doctrine).

2) The issues in dispute are within the scope of the Agreement.

The Agreement between Bedroc and Mason Tenders contains a broad arbitration clause, which designates for arbitration "disputes arising between the parties involving questions of interpretation or application of any clause of this Agreement (or a previous Agreement to which the Employer was subject)." (Agreement at 35.) *See Abram Landau Real Estate v. Bevona,* 123 F.3d 69, 71 (2d Cir.1997) (finding a similarly worded clause to be a "broad arbitration clause").<sup>FN1</sup> Also, the disputed issue is clearly "on its face within the purview of the clause." *McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Corp.,* 858 F.2d 825, 832 (2d Cir.1988). Subsection (h) of the arbitration clause states that "any and all claims alleging ... the establishment or maintenance of other business entities," "as well as claims, in whole or in part, seeking dues, wages, fringe benefit and/or

MTDPAC contributions" are arbitrable. (Agreement at 37.) Because the arbitration clause, and this subsection in particular, embraces the claim at issue, which concerns failure to pay fringe benefit contributions, the claim is arbitrable. *See Thomas James Assocs. v. Jameson,* 102 F.3d at 65; *Vittoria Corp. v. New York Hotel & Motel Trades Council,* 30 F.Supp.2d at 436 (finding a dispute to be arbitrable "[b]ecause [the arbitration clause] is susceptible of an interpretation that includes the dispute"); *see also New York City Dist. of Carpenters Pension Fund v. V.P.O. Drywall, Inc.,* 99 Civ. 5999, 1999 U.S. Dist. LEXIS 17265 (S.D.N.Y. Nov. 4, 1999) (upholding an arbitral award based on "respondent's failure to pay fringe benefit contributions to the Funds pursuant to the terms of the Agreement").

> FN1. "No fixed rules govern the determination of an arbitration clause's scope; while very expansive language will generally suggest a broad arbitration clause, ... we have also found broad clauses when examining phrasing slightly more limited." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.,* 252 F.3d 218, 225 (2d Cir.2001) (citing *Abram Landau Real Estate v. Bevona,* 123 F .3d at 71).

And, whether Seasons is an "Employer" or the alter ego of Bedroc is, relatedly, within the scope of the arbitration clause. *See CVG Ferrominera Orinoco, C.A. v. Transportes Ferreos De Venez., C.A.,* No. 05 Civ. 8470, 2006 U.S. Dist. LEXIS 302, at \*1 (S.D.N.Y. Jan. 3, 2006) ("the alter ego issue is covered by the arbitration agreement and may be heard and determined by the arbitration panel"); *Mobius Mgmt. Sys. v. Technologic Software Concepts Inc.,* No. 02 Civ. 2820, 2002 U.S. Dist. LEXIS 17789, at \*5 (S.D.N.Y. Sept. 23, 2002) (finding that where the arbitration provision was broad, "the arbitrator was empowered to resolve the [alter ego] issue"); *Pana-Oro, S.A. v. Johnson Matthey Florida, Inc.,* No. 85 Civ. 9059, 1986 U.S. Dist. LEXIS 29048, at \*9 (S.D.N.Y. Feb. 21, 1986) (an "arbitration clause cannot be extended by construction or implication to include an individual

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                          Page 4

Slip Copy, 2006 WL 3057311 (S.D.N.Y.)
**(Cite as: Slip Copy)**

who is not a party to the agreement," however "an
exception to this rule exists ... in circumstances
where there is alter ego relationship"). Because the
arbitration clause is broad and the claims are within
the Agreement, the dispute is arbitrable. *See
Associated Brick Mason Contractors, Inc. v.
Harrington,* 820 F.2d at 35.


                    V. Conclusion and Order

**\*4** For the foregoing reasons, Bedroc's motion to
stay arbitration is denied. The Clerk is respectfully
requested to close this case.

S.D.N.Y.,2006.
Bedroc Contracting L.L.C. v. Mason Tenders Dist.
Council of Greater New York and Long Island
Slip Copy, 2006 WL 3057311 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 21203405 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

▷
Fabry's S.R.L. v. IFT Intern., Inc.
S.D.N.Y.,2003.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
FABRY'S S.R.L., Plaintiff,
v.
IFT INTERNATIONAL, INC. and Antonio
Maggioni, Defendants.
**No. 02 Civ. 9855(SAS).**

May 21, 2003.

Manufacturer brought diversity action against distributor alleging breach of contract, breach of agency agreement, breach of fiduciary duty, conversion, fraud, negligent misrepresentation, and unfair dealing. On manufacturer's motion for partial summary judgment, and distributor's motion to compel arbitration, the District Court, Scheindlin, J., held that: (1) distributor breached valid contract with manufacturer by failing to transfer money that distributor received from manufacturer's customers; (2) distributor's continued retention of payments was sufficient to establish conversion as action distinct from any breach of contract claim; (3) manufacturer was not required to arbitrate dispute; and (4) distributor's statements in opposition to manufacturer's motion for summary judgment were not sanctionable.

Motion for partial summary judgment granted, and motion to compel arbitration denied.
West Headnotes
**[1] Contracts 95 ☞312(1)**

95 Contracts
    95V Performance or Breach
        95k312 Acts or Omissions Constituting Breach in General
            95k312(1) k. In General. Most Cited Cases
Distributor breached valid contract with manufacturer under New York law, which was established when manufacturer accepted distributor's offer to provide collection services on product distributed in return for consideration, by failing to transfer money that distributor received from manufacturer's customers.

**[2] Trover and Conversion 389 ☞13**

389 Trover and Conversion
    389II Actions
        389II(A) Right of Action and Defenses
            389k13 k. Nature and Scope of Remedy in General. Most Cited Cases
Distributor's continued retention of payments collected from manufacturer's customers without authorization and in defiance of manufacturer's superior right of ownership was sufficient under New York law to establish conversion as action distinct from any breach of contract claim.

**[3] T ☞143**

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(B) Agreements to Arbitrate
            25Tk142 Disputes and Matters Arbitrable Under Agreement
                25Tk143 k. In General. Most Cited Cases
    (Formerly 33k7.5 Arbitration)
Manufacturer was not required to arbitrate dispute with distributor under Federal Arbitration Act (FAA), over distributor's obligations to collect funds from customers and remit those funds to manufacturer, since arbitration clause was narrow, in that it only governed interpretation of agreement, and there was no disagreement over agreement's interpretation, rather, dispute was over amount of money owed to manufacturer. 9 U.S.C.A. § 1 et seq.

**[4] Federal Civil Procedure 170A ☞2774(5)**

170A Federal Civil Procedure
    170AXX Sanctions
        170AXX(B) Grounds for Imposition

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 2

Not Reported in F.Supp.2d, 2003 WL 21203405 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

170Ak2767 Unwarranted, Groundless or Frivolous Papers or Claims
        170Ak2774 Motions and Opposition Thereto
        170Ak2774(5)    k.    Summary Judgment Motions and Affidavits. Most Cited Cases
Distributor's statements in opposition to manufacturer's motion for summary judgment were not sanctionable, since those statements were not material or blatantly false. Fed.Rules Civ.Proc.Rule 11(b)(1), 28 U.S.C.A.; Fed.Rules Civ.Proc.Rule 56(g), 28 U.S.C.A.

Francesco DiPietro, DeOrchis & Partners, LLP, New York, NY, for Plaintiff.
Clyde M. Schaefer, Carmel, NY, for Defendants.

### OPINION AND ORDER
SCHEINDLIN, J.
*1 On December 13, 2002, Fabry's S.r.L. ("Fabry's") initiated this action against IFT International, Inc. ( "IFT") and Antonio Maggioni, as officer of IFT, asserting seven claims: breach of contract, breach of agency agreement, breach of fiduciary duty, conversion, fraud, negligent misrepresentation, and unfair dealing.[FN1] Fabry's now moves for partial summary judgment against IFT on the breach of contract and conversion claims pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rules"). Defendants cross move pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3-4, to compel arbitration and stay the current action. In its reply, Fabry's further moves for sanctions and reasonable attorney's fees to be imposed on defendants and their counsel pursuant to Rules 11 and 56(g). For the foregoing reasons, plaintiff's motion for partial summary judgment is granted and defendants' cross-motion to compel arbitration is denied. Plaintiff's motion for sanctions and attorney's fees is also denied.

FN1. Fabry's amended the Complaint on January 30, 2003.

### I. BACKGROUND

#### A. The Agency Agreement

Fabry's is an Italian company that sells merchandise in the United States. See Amended Verified Complaint ("Compl.") ¶ 3. IFT is a New York corporation that imports and distributes apparel and accessories. See Defendants' Petition to Compel Arbitration ("Def.Pet.") ¶ 6. On or about December 23, 1998, Fabry's and IFT entered into a Credit Guarantee and Collection Services Agreement (the "Agreement"). See Local Rule of Civil Procedure 56.1 Statement of Material Facts in Support of Plaintiff's Motion for Summary Judgment ("Pl.56.1") ¶ 1. This Agreement enabled Fabry's to sell merchandise in the United States; using IFT as its agent for the collection of payments, and the management of its accounts. See id. ¶ 2; Def. Pet. ¶ 6.[FN2]

FN2. Defendants have not submitted either a 56.1 statement, a response to Fabry's 56.1 statement, or an answer.

Pursuant to the Agreement, Fabry's forwarded original invoices for merchandise to IFT and notified its debtors that collection would be managed exclusively by IFT. See Pl. 56.1 ¶¶ 2, 4-5. In turn, IFT was to collect the accounts receivable and forward them to Fabry's, less IFT's fees and transfer costs. See id. ¶¶ 5-6; Def. Pet ¶ 6. The Terms and Conditions attached to the Agreement required IFT to forward the receivables on the 10th, 20th, and 30th of each month. See Agreement, Ex. A to Compl. at 9. The Terms and Conditions further provide that the "initial annual fee of 2.5% (two point five percent) will be calculated on the actual sales volume realized." Id. The Agreement also specified that payments made to Fabry's would be at a cost of $20 per wire transfer, or at no cost by regular check. See id.

In 2002, IFT received $354,450.78 in payments from plaintiff's customers. See Pl. 56.1 ¶ 7. Although defendant made regular reports to Fabry's of its receipt of these payments as required under the Agreement, it did not forward the money to Fabry's. See Pl. 56.1 ¶ 7; Def. Pet. ¶ 3. As a result, Fabry's terminated the Agreement by fax and registered letter on December 5, 2002. See Pl. 56.1 ¶ 8; 12/5/02 Letter from F. Mercati to IFT, Ex. C

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2003 WL 21203405 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

to 2/26/03 Affidavit of Massimiliano Martini, officer of Fabry's ("Martini Aff."). Fabry's then sent Maggioni a letter on December 17, 2002, informing him that if IFT received any further payments from its customers, IFT was to notify Fabry's and forward all payments to it. *See* Pl. 56.1 ¶ 9; 12/17/02 Letter from Martini to Maggioni ("Martini Ltr."), Ex. D to Martini Aff. Fabry's claims that it has "demanded payment on several occasions." Martini Aff. ¶ 11.

**\*2** After the termination of the Agreement, IFT received an additional $122,489.59 from plaintiff's customers, which it did not forward to Fabry's, bringing the total revenue collected to $548,546.76. *See* Pl. 56.1 ¶¶ 10-11; Payment Plan, Ex. E to Martini Aff. Fabry's concedes that, pursuant to the agreement, IFT is entitled to fees in the amount of $13,713.66, or 2.5 percent of the revenue that IFT has collected but not transferred. *See* Plaintiff's Reply to Memorandum of Law in Support of its Motion for Partial Summary Judgment ("Pl.Rep.") at 7.

### B. The Arbitration Clause

Article 21 of the Agreement contains a "Controversies Resolution" provision, which details the dispute resolution mechanisms that Fabry's and IFT would use for certain disputes arising out of the Agreement. *See* Agreement at 7-8. The first clause provides that the parties "shall attempt in good faith to resolve by mediation any dispute arising out of or relating to this Agreement and to the attached Terms and Conditions." *Id.* at 7. The second clause of article 21 mandates arbitration if "the parties have been unable to resolve by mediation any dispute arising from the interpretation of this agreement." *Id.*

### II. SUMMARY JUDGMENT

#### A. Legal Standard

Rule 56 provides for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Under this standard, an issue of fact is material if it " might affect the outcome of the suit under the governing law." *Shade v. Housing Auth. of City of New Haven,* 251 F.3d 307, 314 (2d Cir.2001) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). " An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In its determination of whether a genuine issue of material fact exists, this Court must make all inferences and resolve all ambiguities in favor of the non-moving party. *See Anderson,* 477 U.S. at 255.

Once the moving party has met its burden of demonstrating no genuine issue of material fact, the nonmoving party must present "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). That is, the non-moving party " must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp. .,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Elec. Inspectors, Inc. v. Village of East Hills,* 320 F.3d 110, 117 (2d Cir.2003). " Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.,* 196 F.3d 435, 452 (2d Cir.1999); *see also Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998) ("If the evidence presented by the non-moving party is merely colorable, or is not significantly probative, summary judgment may be granted.") (internal quotation marks, citations, and alterations omitted). Conclusory statements, conjecture or speculation cannot by themselves create a genuine issue of material fact. *See Kulak v. City of New York,* 88 F.3d 63, 71 (2d Cir.1996).

#### B. Breach of Contract

**\*3** [1] Fabry's claims that IFT breached the Agreement by failing to transfer the money that

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                   Page 4

Not Reported in F.Supp.2d, 2003 WL 21203405 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

defendant received from plaintiff's customers in 2002 and 2003. *See* Compl. ¶¶ 48-50. There are four elements of breach of contract under New York Law: the making of a contract; performance of the contract by the plaintiff; breach of the contract by the defendant; and damages suffered by the plaintiff. *See Coastal Aviation, Inc. v. Commander Aircraft Co.* ., 937 F.Supp. 1051, 1060 (S.D.N.Y.1996), *aff'd,* 108 F.3d 1369 (2d Cir.1997).

Fabry's asserts that summary judgment is appropriate because Fabry's accepted IFT's offer to provide collection services in return for consideration, and thus the Agreement is a valid contract. *See* Plaintiff's Memorandum of Law in Support of Partial Summary Judgment ("Pl.Mem.") at 8. Fabry's claims that, pursuant to the contract, it sold merchandise to U.S. buyers in 2002 and notified them that all payments must be made directly to IFT. *See* Pl. 56.1 ¶ 2. Moreover, Fabry's contends that IFT has admitted that, from October 2002 through January 2003, it "collected on behalf of Fabry's the total sum [of] $548,546.76," which it has not paid to Fabry's. *Id.* ¶ 11.

In response, IFT contends that although it has collected "an amount of monies" that it has not transferred to Fabry's, the amount to be remitted to Fabry's "is in dispute by virtue of fees and expenses which are due and owing to IFT pursuant to the Agreement." Def. Pet ¶ 3. IFT's assertion that the amount of money to be transferred to Fabry's is "in dispute" is not supported by any admissible evidence. Such an assertion, without more, cannot create a genuine issue of material fact. Accordingly, summary judgment is granted to Fabry's on the breach of contract claim.

### C. Conversion

" 'Conversion is any unauthorized exercise of dominion or control over property by one who is not the owner of the property which interferes with and is in defiance of a superior possessory right of another in the property." ' *Schwartz v. Capital Liquidators, Inc.,* 984 F.2d 53, 53 (2d Cir.1993) (quoting *Meese v. Miller,* 79 A.D.2d 237, 436 N.Y.S.2d 496, 500 (4th Dep't 1981)).[FN3] When the

original possession is lawful, "conversion does not occur until the defendant refuses to return property after demand or until he sooner disposes of the property." *Id.* at 54 (quoting *Johnson v. Gumer,* 94 A.D.2d 955, 464 N.Y.S.2d 318, 319 (4th Dep't 1983)).

> FN3. The elements of conversion under New York Law are: "(1) the party charged has acted without authorization, and (2) exercised dominion or a right of ownership over property belonging to another, (3) the rightful owner makes a demand for the property, and (4) the demand for the return is refused." *Seanto Exports v. United Arab Agencies,* 137 F.Supp.2d 445, 451 (S.D.N.Y.2001) (quoting *Heneghan v. Cap-A-Radiator Shops,* 132 Misc.2d 936, 506 N.Y.S.2d 132, 134 (Civ.Ct. Nassau Co.1986)).

Under New York law, "[i]t is well settled that an action will lie for the conversion of money where there is a specific, identifiable fund and an obligation to return or otherwise treat in a particular manner the specific fund in question." *Mfrs. Hanover Trust Co. v. Chemical Bank,* 559 N.Y.2d 704, 712 (1990); *see also Key Bank of New York v. Grossi,* 227 A.D.2d 841, 642 N.Y.S.2d 403, 405 (3d Dep't 1996); *Anglo-Iberia Underwriting Mgmt. Co. v. Lodderhose,* 224 F.Supp.2d 679, 689 (S.D.N.Y.2002). However, an action for conversion cannot be validly maintained "where damages are merely being sought for breach of contract." *Peters Griffin Woodward, Inc. v. WCSC, Inc.,* 88 A.D.2d 883, 452 N.Y.S.2d 599, 600 (1st Dep't 1982). A plaintiff must show acts that were unlawful or wrongful as opposed to mere violations of contractual rights. *See Calcutti v. SBU, Inc.,* 223 F.Supp.2d 517, 523 (S.D.N.Y.2002).

***4** [2] The money at issue here is specifically identifiable as payments for the merchandise sold by Fabry's to its customers in the United States that was collected by IFT. Fabry's was the rightful owner of this money as the owner of the property sold to its customers in the United States. While IFT was authorized to collect payments from

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 5

Not Reported in F.Supp.2d, 2003 WL 21203405 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

plaintiff's customers for whom it had been assigned the invoices, it was obliged to transfer the payments, less fees and transfer costs, to Fabry's on the 10th, 20th, and 30th of each month. Although Fabry's has demanded payments "on several occasions," IFT has retained control over the revenue and thus interfered with plaintiff's superior possessory right. Martini Aff. ¶ 11. Moreover, after Fabry's terminated the Agreement and demanded that "[s]hould IFT receive payments of monies due and owing to Fabry's by its Customers, IFT is instructed to notify Fabry's immediately and to forward such monies to Fabry's accordingly," IFT continued to accept payments and retain them without authorization. Pl. 56.1 ¶ 9; Martini Ltr.

IFT's continued retention of the payments collected from plaintiff's customers without authorization and in defiance of plaintiff's superior right of ownership is sufficient to establish conversion as an action distinct from any breach of contract claim. Because IFT has not disputed the facts as set forth in plaintiff's moving papers regarding its possession of payments made by plaintiff's customers, there is no genuine issue of material fact in dispute and thus summary judgment is granted to Fabry's on the claim of conversion.

## III. ARBITRATION

[3] IFT and Maggioni move to compel arbitration of the Complaint pursuant to clause 21.2 of the Agreement. Defendants contend that this Court should order the parties to arbitrate their dispute because the Agreement contains a valid arbitration clause, the Agreement containing the clause affects commerce among the several states within the meaning of the Federal Arbitration Act ("FAA"), and there is a dispute between the parties arising out of the Agreement. See Def. Pet. ¶¶ 3, 7, 12-14. Fabry's concedes that the arbitration clause is valid, but argues that it is a narrow clause and that the issues before this Court are outside its scope. See Pl. Mem. at 5-6; Pl. Rep. at 5-6.

### A. Legal Standard

The determination of whether a dispute is arbitrable under the FAA comprises two questions: "(1) whether there exists a valid agreement to arbitrate at all under the contract in question ... and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." Hartford Acc. and Indem. Co. v. Swiss Reinsurance Amer. Corp., 246 F.3d 219, 226 (2d Cir.2001) (quoting National Union Fire Ins. Co. v. Belco Petroleum Corp., 88 F.3d 129, 135 (2d Cir.1996)).

Here, the parties agree that there is a valid arbitration clause, and thus the only relevant question is its scope. Because there is "a strong federal policy favoring arbitration ... where, as here, the existence of an arbitration agreement is undisputed, doubts as to whether a claim falls within the scope of that agreement should be resolved in favor of arbitrability." Ace Capital Re Overseas Ltd. v. Cent. United Life Ins. Co., 307 F.3d 24, 28 (2d Cir.2002) (internal quotation marks and citations omitted). Although federal policy favors arbitration, however, it is a matter of consent under the FAA and "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 224 (2d Cir.2001) (quoting AT & T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)).

*5 The Second Circuit has established a three-part inquiry for determining whether a particular dispute falls within the scope of the arbitration agreement. See id. First, "a court should classify the particular clause as either broad or narrow." Id. Second, if the clause is narrow, "the court must determine whether the dispute is over an issue that 'is on its face within the purview of the clause,' or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause." Id. (quoting Rochdale Vill., Inc. v. Public Serv. Employees Union, 605 F.2d 1290, 1295 (2d Cir.1979)). "Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview." Id. Third, if the arbitration clause is broad, " 'there arises a presumption of arbitrability' and arbitration of even a collateral matter will be

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 6

Not Reported in F.Supp.2d, 2003 WL 21203405 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

ordered if the claim alleged 'implicates issues of contract construction or the parties' rights and obligations under it." *Id* . (quoting *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.,* 58 F.3d 16, 23 (2d Cir.1995)).

## B. Discussion

### 1. The Arbitration Clause Is Narrow

Fabry's contends that the clause is narrow and does not cover its claims against IFT. An arbitration clause is broad if "the language of the clause, taken as a whole, evidences the parties' intent to have arbitration serve as the primary recourse for disputes connected to the agreement containing the clause." *Id.* at 225. On the other hand, a clause is narrow if "arbitration was designed to play a more limited role in any future dispute." *Id.*

Clause 21.2 of the Agreement is a narrow clause. It mandates that "[i]f the parties have been unable to resolve by mediation any dispute arising from the interpretation of this agreement," the dispute shall be submitted to a single arbitrator. Agreement at 7. In contrast to the mediation clause, which requires the parties to attempt to resolve by mediation "any dispute arising out of or relating to this Agreement and to the attached Terms and Conditions," the arbitration clause only refers to the "interpretation of this agreement." *Id.* The parties' use of precise language in the arbitration clause suggests an intent to limit arbitration to a particular subset of disputes.

### 2. The Dispute on Its Face Is Not Within the Purview of the Arbitration Clause

The next question is whether the dispute "is over an issue that is on its face within the purview of the clause, or over some collateral issue that is somehow connected to the main agreement that contains the arbitration clause." *Louis Dreyfus Negoce,* 252 F.3d at 224. The current dispute arises out of IFT's admitted failure to remit payments it has collected for Fabry's. Plaintiff's action makes claims for breach of contract, breach of agency

agreement, breach of fiduciary duty, conversion, fraud, negligent misrepresentation, and unfair dealing for IFT's failure to remit the payments it has collected.

**\*6** On its face, this dispute does not fall within the purview of the arbitration clause. IFT does not claim that its failure to remit the money it owes Fabry's is a result of a dispute over the interpretation of the Agreement. Although IFT does argue that there is a dispute between the parties concerning the amount of money it owes to Fabry's, it does not argue that this disagreement arises out of differing interpretations of the Agreement. Indeed, IFT and Maggioni do not explain or give any indication of the nature of the dispute over the amount of money IFT owes Fabry's. IFT and Maggioni's petition to compel arbitration is therefore denied.

## IV. SANCTIONS

[4] Fabry's moves for sanctions and reasonable attorney's fees to be imposed on defendants and their counsel pursuant to Rules 11(b) and 56(g). Fabry's contends that defendants' petition to compel arbitration contains "several unsupported and blatantly false statements concerning important facts." Pl. Rep. at 10.

### A. Legal Standard

A violation of Rule 11 occurs: (1) where a pleading has been interposed for an improper purpose, or (2) where the claims, defenses, and other legal contentions therein are not warranted by existing law or by a non-frivolous argument for a change in the existing law. *See* Fed.R.Civ.P. 11(b). "An argument constitutes a frivolous legal position for purposes of Rule 11 sanctions if, under an objective standard of reasonableness, it is clear ... that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." *Morley v. Ciba-Geigy Corp.,* 66 F.3d 21, 25 (2d Cir.1995) (quoting *Caisse Nationale de Credit Agricole-CNCA v. Valcorp. Inc.,* 28 F.3d 259, 264 (2d Cir.1994)).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 7

Not Reported in F.Supp.2d, 2003 WL 21203405 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

A Rule 11 sanction "is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate." *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 395, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). As such, Rule 11 sanctions are not appropriate for all unsuccessful or unpersuasive arguments. *See Shafii v. British Airways, PLC,* 83 F.3d 566, 570 (2d Cir.1996) (holding an unsuccessful opposition motion to remand not sanctionable under Rule 11); *K.M.B. Warehouse Distribs., Inc. v. Walker Mfg. Co.,* 61 F.3d 123, 131 (2d Cir.1995) (finding that although plaintiff's claims were properly dismissed on summary judgment, award of Rule 11 sanctions not warranted).

The Second Circuit has repeatedly held that "[s]anctions should only be imposed if 'it is patently clear that a claim has absolutely no chance of success,' and all doubts should be resolved in favor of the signing attorney." *K.M.B. Warehouse Distribs., Inc.,* 61 F.3d at 131 (quoting *Rodick v. City of Schenectady,* 1 F.3d 1341, 1350 (2d Cir.1993)). The imposition of sanctions is discretionary, and should be granted "with caution." *Knipe v. Skinner,* 19 F.3d 72, 77 (2d Cir.1994).

### B. Discussion

*7 Defendants' petition to compel arbitration, while not persuasive, does not warrant Rule 11 sanctions. The dispute between the parties arises from a contract that contains an arbitration clause. Therefore, it is not patently unreasonable for defendants to have moved to compel arbitration pursuant to the clause. *See Salovaara v. Eckert,* 222 F.3d 19, 34 (2d Cir.2000) ("[F]aulty" attorney's positions "were not so untenable as a matter of law as to necessitate sanction" and were not "the type of abuse of the adversary system Rule 11 was designed to guard against.") (internal quotations and citations omitted).

Resolving ambiguities in the light most favorable to the signing attorney, there is no evidence that defendants' primary purpose in bringing the petition to compel arbitration was "for any improper purpose, such as to harass or to cause unnecessary delay." Fed.R.Civ.P. 11(b)(1). As such, sanctions are not justified under Rule 11(b)(1). For the same reason, sanctions are not warranted under Rule 56(g), which authorizes the court to impose sanctions for affidavits "presented in bad faith or solely for the purpose of delay." There is no evidence that defendants have presented affidavits in bad faith.

Fabry's contends that the petition has false factual statements in violation of Rules 11 and 56. *See* Pl. Rep. at 8-10. IFT makes several allegations related to plaintiff's unwillingness to continue mediation (*e.g.,* "In contravention of the Agreement Fabry's prematurely withdrew from the mandatory mediation ...."). Def. Pet. ¶ 8. Fabry's contends that it fully cooperated during mediation until the proceedings were concluded. *See* Pl. Rep. at 3. Although the parties' positions differ, IFT's allegations are not necessarily false. The parties simply dispute what ultimately caused the mediation to fail. Whatever the answer, it is irrelevant to the merits of the motion to compel arbitration. *See supra* Part III. IFT's statements are neither material nor blatantly false, therefore, sanctions are unwarranted.

### V. CONCLUSION

In sum, Fabry's is entitled to summary judgment on its claims that IFT unlawfully converted plaintiff's property and breached its contract with Fabry's. Moreover, this dispute is outside the scope of the parties' arbitration agreement. Accordingly, defendants' petition to compel arbitration is denied and plaintiff's motion for partial summary judgment is granted. This case is referred to Magistrate Judge Douglas Eaton for a damages inquest.
SO ORDERED:

S.D.N.Y.,2003.
Fabry's S.R.L. v. IFT Intern., Inc.
Not Reported in F.Supp.2d, 2003 WL 21203405 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



7 Misc.3d 1024(A)                                                                                                          Page 1

7 Misc.3d 1024(A), 801 N.Y.S.2d 236, 2005 WL 1173903 (N.Y.Sup.), 2005 N.Y. Slip Op. 50724(U)
**(Cite as: 7 Misc.3d 1024(A))**

Magellan Reinsurance Co. Ltd. v. New Hampshire
Ins. Co.
N.Y.Sup.,2005.
(The decision of the Court is referenced in a table in
the New York Supplement.)
Supreme Court, New York County, New York.
MAGELLAN REINSURANCE COMPANY LTD.,
Petitioner,
v.
NEW HAMPSHIRE INSURANCE COMPANY,
Respondent.
No. 1017890/05.

March 15, 2005.

NICHOLAS FIGUEROA, J.
*1 Petitioner seeks, pursuant to CPLR § 7503(a) to
enjoin a foreign proceeding commenced by
respondent in the Supreme Court of Turks and
Caicos Islands (the foreign court) and to compel
respondent to arbitrate in New York pursuant to an
arbitration agreement.

Petitioner was incorporated under the laws of Turks
and Caicos. Respondent is apparently a New York
Corporation. The court is unaware of what, if any,
contacts petitioner has with New York.

The arbitration agreement in question on this
proceeding is contained in the reinsurance
agreement's Article XIV. The provision states that:
"A.All disputes or differences arising out of the
interpretation of this Agreement shall be submitted
to the decision of two arbitrators, one to be chosen
by each party ...
B.The arbitration proceeding shall take place in
New York, New York."
Paragraph 12 of the trust agreement states that "
This Agreement shall be governed by the laws of
the State of New York".

In opposing the motion, respondent argues that the
arbitration provision is limited in scope. The only

dispute subject to arbitration is one involving the
interpretation of the reinsurance agreement. The
dispute, according to respondent, involves
petitioner's failure to deposit funds into a trust
account, a requirement under the reinsurance
agreement. That provision, Article VIII, reads that,
"The Reinsurer [petitioner] will provide the
company [respondent] with a Trust Agreement
acceptable to the Company and its regulatory
authorities. The Reinsurer shall be required to
deposit an amount equal to 100% of the total
unearned premium reserve plus the outstanding loss
reserves as determined by the company at end of
each calendar quarter."

Respondent notes that petitioner has, at various
times, disputed the question of whether it is
indebted to it, but that the question of indebtedness
is a factual question for the foreign court to
determine, as petitioner is a Turks and Caicos
domiciliary.

Moreover, respondent points out that the foreign
court, on March 2, 2002, denied petitioner's
application for a stay, based on the arbitration
clause and a temporary restraining order this court
signed on March 1, 2005. The foreign court rejected
the argument, made here, that the dispute is one of
contract interpretation that must be arbitrated.

Petitioner submits an affidavit from Phillip Apgar,
its Chief Operating and Financial Officer, in
support of the petition. Apgar does not articulate the
nature of the dispute purportedly to be arbitrated.
The affidavit merely annexes copies of three
documents: a reinsurance agreement between the
parties dated January 17, 1997; a trust agreement
between the parties dated April 11, 1997; the
petition and supporting papers respondent filed in
the foreign action alleging that $1,440,459.45 was
due and owing to it from the petitioner, and that
because the petitioner is apparently insolvent, it
ought to be dissolved under Turks and Caicos law.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

7 Misc.3d 1024(A)                                                                                        Page 2

7 Misc.3d 1024(A), 801 N.Y.S.2d 236, 2005 WL 1173903 (N.Y.Sup.), 2005 N.Y. Slip Op. 50724(U)
**(Cite as: 7 Misc.3d 1024(A))**

**\*2** Counsel for respondent, during oral argument, informed the court that the foreign court has ruled on the merits, and drafted an order dissolving petitioner; however, we do not know whether the foreign judge has actually signed the order.

In reply, petitioner contends that it disputes the debt. It argues that because respondent has not provided access to the financial records petitioner allegedly demanded, it cannot assess the debt's validity. Again, without specifically articulating the nature of the issue it claims must be interpreted under the reinsurance agreement, petitioner merely refers to various letters from respondent, which it attaches to its reply papers, and states "A review of the correspondence conclusively shows that the dispute centers around the interpretation of the Reinsurance Agreement as it relates to its calculations of amounts due pursuant to the Trust agreement as well as document reporting requirements."

Petitioner has not met its burden of proving that there was "a clear and unequivocal" agreement to arbitrate (see *Matter of Siegel v. 141 Bowery Corp.,* 51 A.D.2d 209, 212). Petitioner, in a vague, conclusory statement, merely asserts, without further elaboration, that the dispute is one of interpretation. This does not satisfy the burden of proving the existence of an arbitrable dispute under the agreement.

Because the arbitration provision in this case is narrowly worded, it applies only to questions regarding interpretation of this agreement, and does not extend "to any controversy arising [under the contract] ..." (*Gerling Global Reinsurance Corporation v. Home Insurance Company,* 302 A.D.2d 118, 124). The question of whether petitioner owes money is not an interpretation of the reinsurance contract; rather, it is a factual controversy concerning respondent's calculation of the amount in dispute (*id.* at 123). Consequently, this is a dispute on the merits of the question of whether petitioner owes money, rendering it insolvent. As such, it is a matter that is subject to judicial determination, not arbitration. Therefore, the foreign court is the appropriate forum to resolve the controversy between the parties, particularly

because petitioner is domiciled in that forum.

As noted, the foreign court has already ruled on the question of whether the arbitration provision barred a judicial determination. That court had jurisdiction over petitioner, and allowed it the opportunity to be heard. There has been no showing that petitioner was deprived of any rights it may have had in a New York court (see *Society of Lloyd's v. Grace,* 278 A.D.2d 169). This court, under the facts and circumstances before it, must extend comity to the foreign tribunal. The fact that there is a limited choice of forum clause and a choice of law clause in the parties' agreement does not bar this court from extending comity to the foreign court's order (see *Allstate Insurance Company v. Linter Group, Ltd.,* 994 F.2d 996, 1000).

**\*3** In its motion, petitioner omits that it asked the foreign court for the same relief it seeks in this court. This court recognizes the power of the latter court to decide the question of whether a corporation domiciled in its territorial jurisdiction may continue to exist. Petitioner, by seeking the identical relief here, is simply forum shopping.

Accordingly, it is

ORDERED that the petition is denied and the proceeding dismissed.

This constitutes the decision and order of the court.

N.Y.Sup.,2005.
Magellan Reinsurance Co. Ltd. v. New Hampshire Ins. Co.
7 Misc.3d 1024(A), 801 N.Y.S.2d 236, 2005 WL 1173903 (N.Y.Sup.), 2005 N.Y. Slip Op. 50724(U)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                           Page 1

Not Reported in F.Supp.2d, 2004 WL 769775 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

**c**
New Hampshire Ins. Co. v. Canali Reinsurance Co.,
Ltd.
S.D.N.Y.,2004.
Only the Westlaw citation is currently available.
    United States District Court,S.D. New York.
    NEW HAMPSHIRE INSURANCE CO., Plaintiff(s)
                            v.
    CANALI REINSURANCE CO., LTD., Feld
    Chevrolet Co., and Andrew S. Wolfson,
                      Defendant(s).
               **No. 03Civ.8889LTSDCF.**

                    April 12, 2004.

Quinn Emanuel Urquhart Oliver & Hedges, LLP,
By: Michael B. Carlinsky, Jennifer J. Barrett,
Bethany R. Henderson, New York, NY, Gardere
Wynne Sewell LLP, By: Scott L. Davis, David H.
Timmins, Jane C. Taber, Dallas, TX, for Petitioner.
Menz Bonner & Komar LLP, By: Patrick D.
Bonner, Jr., New York, NY, for Respondents.

        *MEMORANDUM OPINION AND ORDER*
SWAIN, J.
*1 Petitioner New Hampshire Insurance Company ("
NHIC") filed a Notice of Petition to Compel
Arbitration on October 21, 2003, in the Supreme
Court of the State of New York, in connection with
a dispute over money allegedly owed to Petitioner
pursuant to a reinsurance contract covering a
vehicle service contract program. Shortly thereafter,
the matter was removed to this Court. Respondent
Canali Reinsurance Company ("Canali") now
moves pursuant to Federal Rule of Civil Procedure
12(b)(6) to dismiss the Petition for failure to state a
claim; Respondents Feld Chevrolet ("Feld") and
Andrew S. Wolfson ("Wolfson") move to dismiss
pursuant to Rule 12(b)(2) based on lack of personal
jurisdiction. For the following reasons, Canali's
motion to dismiss is granted.

                   BACKGROUND

The following relevant facts are alleged in the
Petition to Compel Arbitration. Petitioner NHIC has
an agreement with a company known as Warrantech
Automotive, Inc. ("Warrantech"), under which
NHIC reimburses Warrantech for expenses incurred
through claims on certain vehicle service contracts (
"VSCs") that Warrantech sells to car dealership
customers. (Petition to Compel Arbitration ¶ 19.)
A VSC provides a new or used car buyer with
coverage in case of mechanical failure that extends
beyond the car's factory warranty. (*Id.* ¶ 18.)
Insurers profit on VSCs to the extent that the
premium paid for VSCs exceeds the amounts paid
out in claims under the VSCs. (*Id.* ¶ 21.) Because
claims for repairs are paid out over the life of the
contract, which is up to seven years, and because
claims occur more frequently toward the end of the
seven-year contract, insurers of VSCs, such as
NHIC here, receive an influx of cash during the
beginning of the contract and are able to earn
interest on that cash flow. (*Id.*) In order to capitalize
on that cash flow, certain car dealerships have
created reinsurance companies that reinsure NHIC's
obligations to Warrantech. (*Id.* ¶ 22.)

Canali and NHIC entered into such an agreement in
April 1997 (effective as of October 1996) (the "
Reinsurance Agreement"). (*Id.* ¶ 24.) The
agreement contained an arbitration clause that
provides in relevant part:
All disputes or differences arising out of the
interpretation of this Agreement shall be submitted
to the decision of two arbitrators, one to be chosen
by each party, and in the event of the arbitrators
failing to agree, to the decision of an umpire to be
chosen by the arbitrators.

(*Id.* ¶ 13.)

NHIC and Canali also entered into a Trust
Agreement under which NHIC made deposits to a
trust account of money due to Canali under the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 2

Not Reported in F.Supp.2d, 2004 WL 769775 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Reinsurance Agreement in order to ensure that there would be sufficient money available to cover the relevant VSC claims and premiums at all times. (*Id.* ¶¶ 25, 30.) As NHIC made these "cession" payments into the trust account, it issued quarterly cession statements to Canali that, according to NHIC, should have notified Respondents of the total amounts that they should have deposited into the trust account to satisfy obligations under the Reinsurance Agreement and Trust Agreement. (*Id.* ¶ 31.) Petitioner asserts the Respondents underfunded the trust account and therefore materially breached the Reinsurance Agreement. (*Id.* ¶¶ 14, 33-40.)

*2 Petitioner submitted a written demand to Respondents for arbitration pursuant to the Reinsurance Agreement on March 4, 2003. (*Id.* ¶ 56.) Respondents have not complied with the demand, contending that the question of whether the Reinsurance Agreement has been breached is one that is outside the scope of the arbitration clause of the Reinsurance Agreement. (Resp. Mem. of Law in Support of Mot. to Dismiss, at 8.) Respondent Canali now moves on this same basis, pursuant to Rule 12(b)(6), to dismiss the Petition to Compel Arbitration for failure to state a claim.

### DISCUSSION

In deciding a motion to dismiss for failure to state a claim upon which relief may be granted, a court must accept as true the material facts alleged by the plaintiff and draw all reasonable inferences in plaintiff's favor. *Grandon v. Merrill Lynch,* 147 F .3d 184, 188 (2d Cir.1998). The court must not dismiss the action unless " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." ' *Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)); *Sims v. Artuz,* 230 F.3d 14, 20 (2d Cir.2000).

The Second Circuit has established a two-part test to determine the arbitrability of claims not derived from federal statutes: "(1) whether the parties agreed to arbitrate disputes at all; and (2) whether

the dispute at issue comes within the scope of the arbitration agreement." *Ace Capital Re Overseas Ltd. v. Central United Life Ins. Co.,* 307 F.3d 24, 28 (2d Cir.2002). Because Article XIV of the Reinsurance Agreement contains an arbitration clause, there is no dispute as to the first part of the test, at least as to Respondent Canali, which is the only Respondent that executed the Reinsurance Agreement. The Court therefore turns to the question of whether the dispute, as framed by Petitioner, falls within the scope of the arbitration clause.

The Supreme Court has instructed that where, as here, a contract contains an arbitration clause, there is a presumption of arbitrability *"unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute" AT & T Tech., Inc. v. Communications Workers of Am.,* 475 U.S. 643, 650 (1986) (emphasis added). The arbitration clause of the Reinsurance Agreement between NHIC and Canali focuses on disputes or differences arising out of the interpretation of the Agreement. The dispute here concerns Respondents' alleged failure to deposit funds to the trust account pursuant to the terms of the Reinsurance Agreement and the Trust Agreement. Because there is no indication that there is any dispute over the calculation of the amounts due, there is nothing in the Petition that even remotely implicates a need for interpretation of the Reinsurance Agreement.

Narrow arbitration clauses such as the one upon which the Petition relies cannot authorize compulsion of the arbitration disputes beyond their scope. *See Gerling Global Reinsurance Corp. v. Home Ins. Co.,* 302 A.D.2d 118, 123-24 (N.Y.App. Div., 1st Dept.2002) (dispute regarding a party's obligation to refund money pursuant to an insurance contract was not within the purview of the arbitration clause specifying arbitration only in the event of a dispute as to contract interpretation); *see also Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.,* 252 F.3d 218, 225 (2d Cir.2001) (" When parties use expansive language in drafting an arbitration clause, presumably they intend all issues that 'touch matters' within the main agreement to be arbitrated ... while the intended scope of a narrow

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 4 of 8

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2004 WL 769775 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 3

arbitration clause is obviously more limited.").

**\*3** Petitioner's contention that the arbitration clause is a broad one rests on a reading of the provision that is plainly inconsistent with its terms. Petitioner represents that the relevant clause mandates arbitration of "[a]ll disputes or differences arising out of ... this Agreement." That is true, but only if the reader ignores the middle of the clause, which in its entirety provides for arbitration of "[a]ll disputes or differences *arising out of the interpretation* of this Agreement." (Reinsurance Agreement, Art. XIV) (emphasis added). Petitioner's reading of the clause renders the interpretation language as mere surplusage and defies the plain meaning of the clause. As the Second Circuit has explained," ... it is axiomatic that, when interpreting a contract, the court generally must consider the contract as a whole so that it may give significance to each term." *T.G.I. Friday's Inc. v. Nat'l Restaurants Mgmt., Inc.,* 59 F.3d 368, 373 (2d Cir.1995).

Read properly and as a whole, the arbitration clause, which is integral to the Petition, clearly covers only a specific category of disputes-ones arising out of the interpretation of the Reinsurance Agreement. Also confirming a narrow reading of the arbitration clause is the fact that the parties included a separate Service of Suit clause in Article XVI of the Reinsurance Agreement providing that in the event that there is a dispute regarding amounts due pursuant to the Agreement, the parties will submit to the jurisdiction of a United States court with the specific provision that

[n]othing in this clause constitutes or should be understood to constitute a waiver of Reinsurers' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any state in the United States.

(*See* Reinsurance Agreement, Art. XVI.) Such provisions clearly show that the parties contemplated disputes that would not fall within the scope of the arbitration clause.

Even when the Petition is read in the light most

favorable to the Petitioner, it can nonetheless be said with positive assurance in this matter that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Accordingly, the Petition fails to state a claim upon which relief may be granted and must be dismissed. FN1

> FN1. The gravamen of the claim Petitioner seeks to arbitrate is the contention that NHIC should be able to enforce the financial cession payment provisions of the Reinsurance Agreement against Respondents Feld and Wolfson, even though neither of those Respondents was a signatory to the Reinsurance Agreement. Petitioner alleges that Canali has neither the funds to make good its reinsurance obligations nor an independent income stream. (Petition to Compel Arbitration ¶ ¶ 41-47.) Petitioner's theory of liability thus rests on alleged fraud and piercing of the corporate veil, rather than an interpretation of any provisions of the Reinsurance Agreement. (*See id.* ¶ 47 (" As a consequence of their wrongful and fraudulent activity toward NHIC, Wolfson, Feld and Canali are alter egos and jointly and severally liable for the losses experienced by NHIC.").)

CONCLUSION

Because neither the factual allegations of the Petition nor the language of the clause pursuant to which Petitioner seeks to compel arbitration of the reinsurance liability dispute would entitle Petitioner to the relief it seeks (*i.e.,* an order compelling arbitration of the underlying dispute), Canali's motion to dismiss is granted, and the Petition is dismissed as against all Respondents for failure to state a claim upon which relief may be granted.

Petitioner has requested leave to amend its allegations to demonstrate that this is a dispute within the scope of the arbitration clause, that is, one requiring interpretation of the Reinsurance Agreement. Petitioner's application is granted.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 4

Not Reported in F.Supp.2d, 2004 WL 769775 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

NHIC shall serve and file an amended Petition to
Compel Arbitration no later than Friday, April 23,
2004. If Petitioner files an amended Petition, the
Court will hold an Initial Pre-trial Conference on
Wednesday, June 30, 2004, at 11:00 a.m. If
Petitioner fails to file and serve its amended Petition
by April 23, 2004, this action will be dismissed with
prejudice without further notice to the parties.

*4 The motion to dismiss the Petition as against
Respondents Wolfson and Feld for lack of personal
jurisdiction, pursuant to Rule 12(b)(2), is denied
without prejudice as moot in light of the Court's
determination as to the viability of the current
pleading.

SO ORDERED.

S.D.N.Y.,2004.
New Hampshire Ins. Co. v. Canali Reinsurance Co.,
Ltd.
Not Reported in F.Supp.2d, 2004 WL 769775
(S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.