EXHIBIT B
TO THE SUPPLEMENTAL CERTIFICATION
OF BRIAN E. O'DONNELL
DATED MAY 31, 2007

Railroad Ins. Underwriters v. Certain Underwriters at Lloyd's, London, et al.

07cv3071(LLS)

# LAW OF REINSURANCE

GRAYDON S. STARING

of the California and
United States Supreme Court Bars



RECEIVED
AUG 1 2 2005
RIKER DANZIG SCHERER
HYLAND PERRETTI LIBRARY

CLARK
BOARDMAN
CALLAGHAN®

DEERFIELD, IL • NEW YORK, NY • ROCHESTER, NY

PARTICULAR CLAUSES § 15:8

need be no return of the monthly payments of the minimum premium already made.[7] In another case a large advance payment was made on three treaties, which were prematurely terminated. The reinsured wanted a portion of the advance premiums returned but the contract said nothing about it. The dispute went to arbitration under a clause empowering the arbitrators to decide on the bases of equity and customary practices. The arbitrators awarded a return of premiums but confessed that nothing in the contract guided them and that the customs and usages of the industry were not sufficiently specific to be helpful. A court overturned their award as being unsupported by any authority.[8] The appellate court reversed, however, holding that the award could be supported by equitable considerations, which the clause permitted, in the absence of contractual language or guidance from industry usage.[9] Thus the lower court judgment may be good law of reinsurance, although not of arbitration.

Several issues on the payment or return of premiums are discussed elsewhere in connection with cancellation,[10] brokers and agents,[11] set-offs,[12] and insolvency.[13]

§ 15:8    Audit and Inspection Rights

No doubt most reinsurance claims settlement is done on a basis of mutual confidence, without an inquisition by the reinsurer. But just as the insurer needs to have the right, and in most instances to exercise the practice, of investigating the facts of the insured's claim, so the reinsurer needs the reassurance of being able to audit the reinsured's books and claims and underwriting files, if necessary, to see what the reinsured is underwriting and how it is handling the claims and that they are within the reinsurance contract. To this end reinsurance treaties contain audit and inspection clauses, giving the reinsurer a right of access to the reinsured's

---

[7] Justice v. Stuyvesant Ins. Co., 265 F. Supp. 63 (S.D. W. Va. 1967) (cas. re.); see also Chapter 14.

[8] In Re Arbitration of Executive Life Ins. Co. v Alexander Ins. Ltd., Docket Nos. 8:CV91-00020 and 8:CV91-00434, 3 Mealey's Reins Rep No 1, B (D. Neb. 1992) (life re.).

[9] Executive Life Ins. Co. of New York v. Alexander Ins. Ltd., 999 F.2d 318 (8th Cir. 1993) (re.).

[10] See Chapter 14.

[11] See Chapter 7.

[12] See Chapter 17.

[13] See Chapter 19.

PARTICULAR CLAUSES § 15:8

Wide ranging audits reviewing all aspects of the operations of any contract have, however, now become much more common. Why is this? The fact is that in the past, the reinsurers relied on the "utmost good faith" of their ceding companies to ensure that terms of contracts were adhered to, that contracts were properly administered and that full and proper disclosure was made prior to inception and at renewal. Sadly they have now found out that in some cases their trust was misplaced and that their reliance has been abused and taken advantage of, causing significant losses which could not have been anticipated.. . .

Whatever the reason, it is clear that in more and more cases the ceding company is refusing access to their records or demanding payment in full as a condition, for allowing the reinsurer to exercise its rights under the contract to review the cedant's records. Reinsurers are being accused of "bad faith" in seeking to avoid their obligations under the contract when all they are trying to do is use their contractual entitlement to verify that the losses actually sought are in fact due by them, prior to making payment.[19]

Outright refusal of disclosure is probably rare but reinsureds may drag their feet. What can be done about this? A declaratory action or action for specific performance could be brought but would perhaps be an unduly heavy weapon. The audit right is so important that, in the author's view, when it is denied or delayed, there should be no question of the right of the reinsurer to withhold payments until the audit or inspection is granted.[20]

There has been very little jurisprudence on the rights of the reinsurer under these clauses. The clearest statement appears in a case decided in Ireland,[21] where the reinsured sought to restrict the inspection in various ways and to restrict also the choice of the inspector, under a clause reading:

> The books of the Company so far as they relate to matters falling under this Treaty be open at all reasonable times to the inspection of the Reinsurer by its duly authorized representative.

It was conceded that all relevant books and records could be

---

N.Y. Co. 1993), aff'g on op. below Docket No. 7712/91 (N.Y. Sup. Ct. N.Y. Co.) (liab. re.).

[19] Kiverstein, All in Good Faith, ReActions, Sept. 1989, 115-16.

[20] See Manhattan Life Ins. Co. v. Prussian Life Ins. Co., 296 F. 39 (2d Cir. 1924) (life re.; refusal "to permit an examination of its books, etc., as to some risks" a breach "of the whole agreement," and, together with another major breach, discharging the reinsurer from all obligations under a treaty).

[21] Winterthur v. Ins. Corp. of Ireland, [1989] I.L.R.M. 13 (Ir. H. Ct. 1986) (re.).

ARBITRATION FUNDAMENTALS § 21:4

it was reached. The court relied heavily[60] on language of the Supreme Court in a labor arbitration case, expressing the strong policy favoring arbitration in such cases, for example, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.. . . "[61] The Supreme Court has always treated arbitrations under collective bargaining agreements as falling under the labor-management laws and not the FAA; while analogies may be drawn, the policies and precedents should not be assumed to be identical.

Narrower clauses may have to do only with quantum or interpretation. An example is a clause limited to disputes "as to the amount to be paid under this Policy (liability being otherwise admitted)." A dispute arose over the number of occurrences, and therefore of deductibles, and the court held that the arbitration clause did not apply, since it was limited to quantum and did not extend to any difference dependent upon interpretation of the clauses of the policy.[62] A clause embracing "differences arising out of the interpretation of this Agreement" is narrow[63] but not quite

---

re.; "relating to the interpretation or performance of this Agreement" is broad and covers dispute under letter retroactively canceling Agreement); cf. Union Mutual Stock Life Ins. Co of America v. Beneficial Life Ins. Co., 774 F.2d 524 (1st Cir. 1985) (life re.; "any transaction under this agreement" broad enough to cover rescission of entire portfolio); Ochsner/Sisters of Charity Health Plan, Inc. v. Certain Underwriters at Lloyd's, Docket No. 96-1627, 7 Mealey's Reins Rep, No. 9, C (E.D. La. 1996) (health re.: unsuccessful contention that "dispute. . . with reference to any transaction" did not embrace rejection of a claim).

[60] Schacht v. Beacon Ins. Co., 742 F.2d 386, 390 (7th Cir. 1984) (auto. re.).

[61] United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 584-585, 80 S. Ct. 1347, 4 L. Ed. 2d 1409, 46 B.N.A. L.R.R.M. 2416, 40 CCH LC ¶ 66629 (1960).

[62] New Hampshire Ins. Co. v. Strabag Bau AG, [1990] 2 Lloyd's Law Report 61 (QB 1989) (liab. ins.).

[63] Washburn v. Societe Commerciale de Reassurance, 831 F.2d 149 (7th Cir. 1987) (re.; interpretation and performance of obligations do not extend to issues of fraud); Selke v. New England Ins. Co., Docket No. 92 C 5599, 3 Mealey's Reins Rep, No. 13, B (N.D. Ill. 1992), rev'd on other grounds, 995 F.2d 688 (7th Cir. 1993), petition denied, 2 F.3d 790 (7th Cir. Ill.)[1993] 2 Re L.R. 292, motion to vacate denied, 4 Mealey's Reins Rep, No. 9, E (re.; stay denied under clause for arbitration, "should an irreconcilable difference of opinion arise as to the interpretation of" the agreement, where allegation was of irreconcilable difference without any showing that it concerned interpretation and it appeared to involve setoff, under statute rather than contract) (statutory provision in dispute held incorporated in

§ 21:4                                              LAW OF REINSURANCE

so narrow as it first appears when we consider how many differences can be traced to interpretation.[64]

A reinsurance clause said to be typical,[65] and certainly in wide use, is quoted in full here, because it is frequently encountered and will be a convenient reference in connection with the topics that follow:

> As a precedent to any right of action hereunder, if any dispute shall arise between the Company and the Reinsurers with reference to the interpretation of this Agreement or their rights with respect to any transaction involved, whether such dispute arises before or after termination of this Agreement, such dispute, upon the written request of either party, shall be submitted to three arbitrators, one to be chosen by each party, and the third by the two so chosen. If either party refuses or neglects to appoint an arbitrator within thirty days after the receipt of written notice from the other party requesting it to do so, the requesting party may appoint two arbitrators. If the two arbitrators fail to agree in the selection of the third arbitrator within thirty days of their appointment, each of them shall name two, of whom the other shall decline one and the decision shall be made by drawing lots. All arbitrators shall be executive officers of insurance or reinsurance companies not under the control of either party to this Agreement. The arbitrators shall interpret this Agreement as an honorable engagement and not as merely a legal obligation; they are relieved of all judicial formalities and may abstain from following the strict rules of law, and they shall make their award with a view to effecting the general purpose of this Agreement in a reasonable manner rather than in accordance with a literal interpretation of the language. Each party shall submit its case to its arbitrator within thirty days of the appointment of the third arbitrator. The decision in writing of any two arbitrators, when filed with the parties hereto, shall be final and binding on both parties. Judgment may be entered upon the final decision of the arbitrators in any court having jurisdiction. Each party shall

---

contract under Ill. law); Florida Dept. of Ins. v. World Re, Inc., Docket Nos. 91-2461, 91-2462, 3 Mealey's Reins Rep, No. 22, H (Fla. App. 5th Dist. 1993) (health re.; public policy favors arbitration but rights are governed by agreement and clause on disputes over "interpretation" only is too narrow to cover claim of fraudulent inducement); see also Associated Indem. Corp. v. Home Ins. Co., 1994 US App LEXIS 3742, 4 Mealey's Reins Rep, No. 21, A (CA6 Mich. 1994) (liab. re.; arbitration denied on failure of reinsurer to identify contract provision requiring interpretation; see note on court rule limiting citation).

[64] See NECA Ins., Ltd. v. National Union Fire Ins. Co., 595 F. Supp. 955 (S.D.N.Y. 1984) (liab. re.).

[65] Salm, Reinsurance Contract Wording, R. Strain (ed.), Reinsurance, 79, 88 (1980).

ARBITRATION FUNDAMENTALS § 21:5

of the parties intended to eliminate disputes and not itself containing an arbitration clause.

While it may not extend to validity, a clause covering disputes "arising out of interpretation" may cover a good deal of ground, including: whether a given payment was a part of the reinsured's net loss and whether it was affected by a following settlements clause; whether the reinsurer was required to fund loss reserves by letters of credit; whether funds were improperly allocated; whether improper demands for security were made; and whether it was improper to establish a competing reinsurance company.[86] Because an Illinois statute provided that all statutes in force at the time of execution of a contract would be deemed part of it, a statutory provision for setoffs was held to be an implied term of the contract and its arbitration clause, a narrow one referring only to interpretation, was therefore applied to a dispute between a liquidator and reinsurers over setoffs.[87]

Another question is raised by the contention that a reinsurance arbitration clause does not reach a claim by the reinsured for extra contractual damages it has to pay on account of its handling of the claims of insureds.[88] Although the reinsurer will resist such a claim on the ground that it is completely outside the scope of the contract, that defense itself presents only an issue of contract obligation, involving possible interpretation. Accordingly, the issue is held within the scope of a clause covering disputes relating to interpretation of the agreement or rights or liabilities of the parties;[89] the same result should be expected from any clause covering

---

[86] NECA Ins., Ltd. v. National Union Fire Ins. Co., 595 F. Supp. 955 (S.D.N.Y. 1984) (liab. re.); see also Underwriting Members of Lloyds of London v. United Home Life Ins. Co., 549 N.E.2d 67 (Ind. Ct. App. 1st Dist. 1990), adopted 563 N.E.2d 609 (Ind. 1990) (life re.).

[87] Selcke v. New England Ins. Co., 995 F.2d 688, [1993] 2 Re LR 292 (7th Cir. Ill. 1993), rev'g Docket No. 92 C 5599, 3 Mealey's Reins Rep, No. 13, B (N.D. Ill. 1992), motion to vacate denied, 4 Mealey's Reins Rep, No. 9, E (7th Cir. Ill. 1993) (re.). The opinion does not identify an issue of interpretation beyond the issue of the right of setoff, which the court appears to have resolved in the process of holding it arbitrable.

[88] See Chapter 16.

[89] Nationwide General Ins. Co. v. Investors Ins. Co., 37 N.Y.2d 91, 371 N.Y.S.2d 463, 332 N.E.2d 333 (1975) (liab. re.).