EXHIBIT C
TO THE SUPPLEMENTAL CERTIFICATION
OF BRIAN E. O'DONNELL
DATED MAY 31, 2007

Railroad Ins. Underwriters v. Certain Underwriters at Lloyd's, London, et al.

07cv3071(LLS)

Case 1:07-cv-03071-LLS   Document 17-4   Filed 05/31/2007   Page 1 of 5

# Modern Reinsurance Law and Practice

## Second Edition

Barry R. Ostrager
and
Mary Kay Vyskocil


Glasser LegalWorks

Other courts hold that ambiguities in a reinsurance contract should be construed against the reinsurer. *Christiania Gen. Ins. Corp. v. Great American Ins. Co.*, 979 F.2d 268, 278 (2d Cir. 1992) ("an ambiguous reinsurance contract is generally construed against the reinsurer"); *Westchester Resco Co. v. New England Reins. Corp.*, 818 F.2d 2, 3 (2d Cir. 1987) (per curiam) ("Where an ambiguity exists in a standard-form contract supplied by one of the parties, the well-established *contra proferentum* principle requires that the ambiguity be construed against that party."); *Travelers Ins. Co. v. Central Nat'l Ins. Co.*, 733 F. Supp. 522, 528 (D. Conn. 1990) (reference in notice clause to claims "likely to involve reinsurance" raises an "ambiguity [that] must be construed against [the reinsurer] which drafted the [facultative] Reinsurance Certificate"); *Justice v. Stuyvesant Ins. Co.*, 265 F. Supp. 63, 65-66 (S.D.W.Va. 1967).

## § 5.03 THE ROLE OF INDUSTRY CUSTOM AND PRACTICE

The special and unique nature of reinsurance arrangements makes it imperative that a court consider industry custom and practice in interpreting reinsurance contracts. Even outside the reinsurance context, basic principles of contract construction require that the terms of a contract are to be construed in light of the "customs, practices, uses and terminology as generally understood in the particular trade or business." *Garza v. Marine Transport Lines, Inc.*, 861 F.2d 23, 27 (2d Cir. 1988); *accord Walk-in Medical Centers, Inc. v. Breuer Capital Corp.*, 818 F.2d 260, 263-64 (2d Cir. 1987) (quoting *Eskimo Pie Corp. v. Whitelawn Dairies, Inc.*, 284 F. Supp. 987, 994 (S.D.N.Y. 1968)); *Commercial Union Ins. Co. v. Seven Provinces Ins. Co.*, 9 F. Supp. 2d 49, 65-66 (D. Mass. 1998), *appeal docketed*, No. 99-01258 (1st Cir. Mar. 10, 1999). *See also* Restatement (Second) of Contract § 222(3) (1985) (usage of trade gives meaning to agreements).

The reasons for considering industry custom and practice are even more compelling in the reinsurance context. The typical reinsurance agreement is relatively short and concise, using terms of art rather than lengthy, legalistic explications to define the obligations of the parties. *See* Robert F. Salm, *Reinsurance Contract Wording*, in REINSURANCE 79 (Robert W. Strain ed. 1980); William D. Latza, *Reinsurance*, in 2 BUSINESS INSURANCE LAW & PRACTICE GUIDE § 14.08[1], at 14-96 (1992). "[R]einsurance is, by its nature and tradition, an often informal affair between knowledgeable parties. Therefore, the typical reinsurance contract is correspondingly brief and dependent upon a degree of common understanding among industry participants." *Id.*

For example, the form facultative certificate in use in the reinsurance industry for decades generally consists of two pages: a declarations page providing the limits and effective dates of the certificate and a second page containing the terms and conditions of the coverage. It is understood in the industry that a facultative certificate need not contain detailed policy provisions (such as those found in direct policies) because the reinsurer's obligations flow from the coverage terms in the reinsured policy, the utmost good faith of the parties, and the well-established industry custom and practice. *Affiliated FM Ins. Co. v. Constitution Reins. Corp.*, 416 Mass. 839, 846, 626 N.E.2d 878, 882 (1994). *See also* Henry T. Kramer, *The Nature of Reinsurance*, REINSURANCE 4, 13 (Robert W. Strain ed. 1980) (facultative certificates lack the detail characteristic of other types of contracts and are dependent upon a degree of common understanding among industry participants).

Indeed, those facultative certificates that contain arbitration clauses often require that the arbitrators be current or former industry professionals and direct the arbitrators to interpret the contract as an honorable engagement (*see* § 5.01 *supra*), rather than as a merely legal obligation. *See, e.g., Phoenix Mut. Life Ins. Co. v. North American Co. for Life & Health Ins.*, 661 F. Supp. 751, 755

and practice considered with respect to issue of whether limits on facultative certificate cap only reinsurer's obligations with respect to indemnity, but not expenses).

### § 5.04 ARBITRATION

Historically, arbitration has been the preferred mechanism for resolving reinsurance disputes. John S. Butler & Robert M. Merkin, Reinsurance Law (rev. ed. 1993) Ch. 5.1-01. The earliest arbitration clauses appeared in European reinsurance contracts dating as far back as the early 19th century. 1 Gerathewohl, K., Reinsurance Principles and Practice 716 (1980). Arbitration clauses in reinsurance contracts have provided an efficient and effective means of resolving commercial disputes between the parties by enabling them to submit their cases to a panel of experts who render an award based on their understanding of reinsurance custom and practice. *Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 63 (2d Cir. 1983). *See generally*, Chapter 14, *infra*.