**EXHIBIT D**
**TO THE SUPPLEMENTAL CERTIFICATION**
**OF BRIAN E. O'DONNELL**
**DATED MAY 31, 2007**


Railroad Ins. Underwriters v. Certain Underwriters at Lloyd's, London, et al.

07cv3071(LLS)

# The Law of
# Reinsurance
# Claims

Robert W. Hammesfahr
Scott W. Wright

Andrews Professional Books

> however, that the liquidators, receivers or statutory successors of the
> Company shall give written notice to the Reinsurer of the pendency of
> any claims against the Company on Policies reinsured hereunder
> within a reasonable time after each such claim is filed; and that during
> the pendency of any such claim the Reinsurer may investigate such
> claim and interpose, at its own expense, in the proceeding where such
> claim is to be adjudicated any defense which it may deem available to
> the Company or its liquidators, receivers or statutory successors. The
> expense thus incurred by the Reinsurer shall be chargeable, subject to
> court approval, against the Company as part of the expense of
> liquidation to the extent of a proportionate share of the benefit which
> may accrue to the Company solely as a result of the defense
> undertaken by the Reinsurer.[35]

The insolvency clause preserves the assets of the insolvent company's estate. In theory, the reinsurer pays the same amount it would have paid had the ceding company remained solvent, and the liquidator assumes the insolvent insurer's rights and obligations pursuant to the reinsurance agreement, including the reporting, settlement, and defense of claims. Generally, the reinsurer has the right to assert all available contract defenses as if the cedent were not insolvent.[36]

However, because of limited resources, the liquidator may not be in a position to handle claims properly. Even a liquidator's good faith attempt to handle claims might result in increased obligations to reinsurers, because there is a natural incentive for the liquidator to maximize reinsurance recoveries to increase the assets of the insolvent company's estate. Thus, reinsurers must watch liquidators carefully to ensure that they handle claims properly, until a full settlement can be reached.

### B. A Reinsurer's Obligation to Pay the Liquidator

#### 1. General Rule

A reinsurer must be careful to pay claims to the proper parties when a cedent becomes insolvent. A policyholder or state guaranty fund might ask a reinsurer to pay its claims when the cedent is insolvent, but a reinsurer generally is obligated to pay only the liquidator administering the insolvent cedent's estate. Numerous courts have followed this general rule.[37]

---

[35]K. Thompson, *Reinsurance* 402 (2d ed. 1966).

[36]See *In re Midland Ins. Co.*, 79 N.Y.2d 253, 582 N.Y.S.2d 58, 590 N.E.2d 1186 (1992).

[37]See *Martin Ins. Agency, Inc. v. Prudential Reinsurance Co.*, 910 F.2d 249 (5th Cir. 1990) (applying Missouri law); *American Re-Ins. Co. v. Insurance Com. of California*, 527 F. Supp. 444 (C.D. Cal. 1981) (applying California law); *Excess & Casualty Reinsurance Ass'n v. Insurance Comr. of California*, 656 F.2d 491 (9th Cir. 1981) (applying California law); *Skandia Am. Reinsurance Corp. v. Barnes*, 458 F. Supp. 13 (D. Colo. 1978) (applying Colorado law); *General Reinsurance Corp. v. Missouri Gen. Ins. Co.*, 596 F.2d 330 (8th Cir. 1979) (applying Missouri law); *Skandia Am. Reinsurance Corp. v. Schenck*, 441 F. Supp. 715 (S.D.N.Y. 1977) (applying New York law).

Policyholders generally have no right to collect from the cedent's reinsurer.[38] For example, in *Avondale Mills Inc. v. American Re-Insurance Co.*,[39] the United States District Court for the Western District of Tennessee, applying New York law, held that a policyholder has no right to sue a reinsurer directly in the absence of an express contractual right to the contrary. This case arose out of a claim the policyholder, Avondale Mills, had against its insolvent insurer, American Mutual. Because American Mutual had stopped providing a defense for the claim upon its liquidation on March 9, 1989, Avondale brought suit against the reinsurer, American Re. The court denied Avondale's claim that it was a third-party beneficiary under the policy, and explained that the insolvency clause clearly requires that reinsurance claims be paid to the insolvent cedent's liquidator. In this context, the court stated:

> The Court concludes that a plain reading of the wording of the Agreement shows that was the specific intent of the parties thereto that in the event of the insolvency of the Company reinsurance payments were to be made only to specifically named payees, the Company itself, its liquidator, receiver or statutory successor... Absent specific language in the treaty to the contrary, as insured cannot recover against a reinsurer.[40]

The court noted that New York law would uphold a valid cut-through endorsement (discussed in the following section).

If the reinsurer pays the wrong party, it may have to pay the claim twice. In *Ainsworth v. General Reinsurance Corp.*,[41] the United States Court of Appeals for the Eighth Circuit held that the reinsurer had improperly paid the policyholder less than the full amount of the claim. The reinsurer was obligated to pay the cedent's liquidator 100 percent of the amount owed. The court ruled that there was no privity of contract between the policyholder and the cedent. Consequently, only the insolvent cedent's liquidator was found to have had the authority to collect reinsurance proceeds. A contract clause clearly setting forth the intention of the parties might read as follows:

[38]*Avondale Mills, Inc. v. American Re-Ins. Co.*, No. 89-2514-HA, 1991 U.S. Dist. LEXIS 20,632 (W.D. Tenn., Aug. 5, 1991); *Florida ex rel. O'Malley v. Department of Ins.*, 155 Ind. App. 168, 291 N.E.2d 907 (1973); *People ex rel. Baylor v. Highway Ins. Co.*, 57 Ill.2d 590, 316 N.E.2d 633 (1974); *Cummings Wholesale Electric Co. v. Home Owners Ins. Co.*, 492 F.2d 268 (7th Cir.), cert. denied sub nom. *Delphi Community School Bldg. Corp. v. Northwestern Ins. Co.*, 419 U.S. 883 (1974); *Arrow Trucking Co. v. Continental Ins. Co.*, 465 So. 2d 691 (La. 1985). One U.S. court ruled that under the law of Florida, Bermuda, and Britain, policyholders have no direct cause of action against a reinsurer. *Byrd v. Jennings*, 1988 U.S. Dist. LEXIS 17,107 (M. D. Fla. 1988). But see *Estate of Osborn v. Gerling Global Life Ins. Co.*, 529 So.2d 169 (Miss. 1988) (where the reinsurance contract of a life insurance policy contained the word "coinsurance" to describe the reinsurer's duty and did not clearly indicate that actual payment by the cedent must be made, the policyholder may sue the reinsurer directly).
[39]No. 89-2514-HA, 1991 U.S. Dist. LEXIS 20,632 (W.D. Tenn., August 15, 1991).
[40]*Id.* at 4-5.
[41]751 F.2d 962 (8th Cir. 1985).

256                        PAYMENT ISSUES

> This Contract is solely between the Company and the Reinsurer, and
> in no instance shall any insured, claimant or other third party have
> any rights under this Contract.[42]

A similar clause has been quoted as follows:

> There is no privity between the original assured and the reinsurer.
> The liability of the latter is only to indemnify the insurer, the
> reassured, in respect of a loss for which he is liable to the assured by
> reason of his insurance policy.[43]

## 2. Cut-Through Exception

A significant exception to the general rule occurs when there is a cut-through endorsement in place. In this case, the reinsurer must reimburse the policyholder. A cut-through endorsement is a guarantee the reinsurer gives to the cedent that it will satisfy the cedent's obligation and as such changes the relationship between the policyholder, cedent, and reinsurer.[44] As indicated in the first paragraph of the insolvency clause listed above, reinsurers generally are permitted to enter into cut-through endorsements.

The endorsement is normally included with the original policy issued to the policyholder. Reinsurers should keep copies of any cut-through endorsements granted.

A cut-through endorsement might read as follows:

> Issued by _____
> (hereinafter called "Reinsurer") at the request of the following party
> (hereinafter called "Company") for attachment to and forming a part
> of the Company's policy set forth below, which policy is reinsured in
> whole or in part by the Reinsurer.
>
> 1. For value received, the Reinsurer hereby guarantees the
> Mortgagee's interest in this Policy and agrees that in the event the
> Company is declared insolvent and placed in liquidation by a court of
> competent jurisdiction and fails to pay any loss payable under this
> Policy, within the times therein agreed upon, the Reinsurer will
> immediately become liable for ____% of the Mortgagee's share of
> such loss and will pay the same at once directly to the Mortgagee, as
> its interest may appear, subject always to the terms and conditions of
> this Policy.
>
> NAME OF MORTGAGEE _____

---

[42]Brokers & Reinsurance Markets Association, 2 *Contract Wording Reference Book* 52A (1990).
[43]R. Carter, *Reinsurance* 138 (2d ed. 1983).
[44]See generally J.F. Langen, "Special Clauses and Endorsements," contained in Strain, *Reinsurance Contract Wording* 601-16 (1992).