EXHIBIT E
TO THE SUPPLEMENTAL CERTIFICATION
OF BRIAN E. O'DONNELL
DATED MAY 31, 2007

Railroad Ins. Underwriters v. Certain Underwriters at Lloyd's, London, et al.

07cv3071(LLS)

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1470217 (E.D.Pa.)
(Cite as: 2000 WL 1470217 (E.D.Pa.))

Page 1

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.
In re: ELCOM TECHNOLOGIES CORPORATION, Debtor,
John Wade Seedor, M.D., and Paul Kouch, Plaintiffs,
v.
AMERICAN DYNASTY SURPLUS LINES INSURANCE COMPANY, National Union Fire Insurance
Company of Pittsburgh, Pa, Zurich American Insurance Company, as Successor in
interest to Zurich Insurance Company, Tig Specialty Insurance Company,
Stonewall Insurance Company, Defendants.
Nos. 98-13343SR, 99-0951.

Oct. 3, 2000.

MEMORANDUM

NEWCOMER.

I. *BACKGROUND*

*1 In this case, plaintiffs and National Union appeal a Bankruptcy Court order compelling arbitration and staying further proceedings in the above captioned case. Specifically, this appeal arises out of a suit by plaintiffs-appellants James Wade Seedor M.D. and Paul Kouch, allegedly two former directors of Elcom Technologies Corporation ("Elcom"), to determine their rights under certain liability insurance policies issued by defendants to Elcom before Elcom filed for Chapter 11 bankruptcy.

Defendant American Dynasty issued a directors and officers liability and corporate reimbursement policy ("D and O") to Elcom and its directors and officers for the period of June 3, 1996--June 3, 1997. Defendants Zurich and TIG issued D and O excess policies that allegedly follow the same form as the primary policy that American Dynasty issued to Elcom.

Defendant National Union also issued a primary, as opposed to excess, D and O policy to Elcom for the benefit of Elcom and its directors and officers for the period of May 31, 1997 to June 3, 1997. National Union extended this policy to August 3, 1998.

In March, 1998, Elcom filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101, et seq. On August 6, 1998, the Bankruptcy Court confirmed the reorganization plan, but retained jurisdiction until the plan is consummated and the case is closed.

Before the Bankruptcy Court confirmed the plan, Kurt Gwynne, Elcom's bankruptcy trustee ("Trustee") and the Unsecured Creditors Committee ("Creditors Committee") filed an adversary proceeding (the "trustee proceeding") on Elcom's behalf which alleged, *inter alia,* that plaintiffs breached various duties owed to Elcom's creditors and its bankruptcy estate. Plaintiffs then requested that the defendants in this case pay for their defense in the trustee proceeding and indemnify them for any loss in that proceeding. American Dynasty,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d          Page 2
Not Reported in F.Supp.2d, 2000 WL 1470217 (E.D.Pa.)
(Cite as: 2000 WL 1470217 (E.D.Pa.))

Zurich and TIG denied plaintiffs coverage, and National Union also denied coverage, but for a different reason.

After defendants denied plaintiffs' insurance claims, plaintiffs initiated this action in the Bankruptcy Court. During those proceedings, defendants American Dynasty, Zurich, and TIG filed motions to compel arbitration and to stay the adversary proceedings pending arbitration pursuant to a mandatory arbitration clause in American Dynasty's D and O policy with Elcom. [FN1] National Union, whose insurance contract with Elcom also has an arbitration clause, also filed a motion to compel arbitration and stay the proceedings pending arbitration.

> FN1. As suggested earlier, Zurich's D and O policy is substantially the same as American Dynasty's policy. The parties dispute whether the TIG policy incorporates the American Dynasty arbitration clause, and this issue is resolved below.

On March 2, 2000, the Bankruptcy Court granted in part and denied in part defendants' motions. Plaintiffs and National Union now appeal the March 2, 2000 Order. The parties raise numerous issues on appeal, and this Court will address those issues below.

II. *DISCUSSION*

In instances of an appeal from a bankruptcy court, a district court's scope of review is well settled. A bankruptcy court's findings may only be set aside if they are clearly erroneous. See *Sapos v. Provident Inst. of Sav.*, 967 F.2d 918, 922 (3rd Cir.1992); *In re Sharon Steel Corp.*, 871 F.2d 1217, 1222 (3rd Cir.1989). In addition, a bankruptcy court's legal conclusions are subject to plenary and de novo review by a district court on appeal. See *id.*

At the outset, appellants American Dynasty, Zurich and TIG argue that this Court lacks subject matter jurisdiction to hear plaintiffs' appeal under the Federal Arbitration Act ("FAA"), 9 U.S.C. § § 1-16. Consequently, the Court must address whether it has jurisdiction before addressing the substance of the Bankruptcy Court's March 2, 2000 Order.

*2 Before addressing whether the Court lacks subject matter jurisdiction under the FAA, the Court must decide whether the FAA governs the insurance contracts at issue. Plaintiffs make four arguments as to why the FAA does not govern the insurance contracts in this case. First, they claim that Pennsylvania Insurance Law, 40 PA.CONS.STAT. § 991.1624, through section 2(b) of McCarran-Ferguson Act, precludes application of the FAA to the insurance contracts between Elcom and American Dynasty, Zurich and TIG. Second, plaintiffs claim that TIG's policy does not have an arbitration clause and one should not be read into that policy. Third, plaintiffs argue that National Union cannot compel arbitration under the FAA because National Union does not satisfy the commerce requirement of the FAA. Finally, plaintiffs argue the FAA does not apply to the American Dynasty, Zurich and TIG policies, nor to the National Union policy because these policies are unconscionable.

Plaintiffs failed to raise, before the Bankruptcy Court, the issues of whether the McCarren-Ferguson Act precludes application of the FAA to the insurance contracts between Elcom and American Dynasty, Zurich and TIG, whether the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

American Dynasty, Zurich and TIG policies are unconscionable, and whether the FAA applies at all to the American Dynasty, Zurich and TIG policies.

As a general rule, a party may not raise a new issue on appeal. See Bethlehem Mines Corp. v. United Mine Workers of America, 494 F.2d 726, 735 (3d Cir.1974). As the Supreme Court stated in Hormel v. Helvering, it is "essential in order that parties may have the opportunity to offer all the evidence they believe relevant to the issues ... [and] in order that litigants may not be surprised on appeal by final decision there of the issues upon which they have had no opportunity to introduce evidence." Hormel v. Helvering, 312 U.S. 552, 556, 61 S.Ct. 719, 85 L.Ed. 1037 (1941) Though an appellate court may exercise some discretion on these matters, see Barrett v. Commonwealth Federal Sav. and Loan Ass'n, 939 F.2d 20, 26 (3rd Cir.1991), in this case, the Court does not find any extraordinary circumstances that would justify considering this issue de novo.

With respect to plaintiffs' claim that the FAA does not apply to the American Dynasty, Zurich and TIG policies at all, plaintiffs' Post Hearing Memorandum opposing American Dynasty's Motion to Compel filed in the Bankruptcy Court, acknowledged that the FAA governed American Dynasty's policy, and instead argued that the FAA did not compel arbitration. Indeed, the Bankruptcy Court's March 2, 2000 Order even acknowledges that the parties "at least agree[.]" that the FAA governs the arbitration provisions at issue. Plaintiffs cannot now argue, for the first time, that the FAA does not govern these policies.

Plaintiffs likewise failed to raise the issue of whether the McCarren-Ferguson Act precludes application of the FAA to the insurance contracts between Elcom and American Dynasty, Zurich and TIG. [FN2] The McCarran-Ferguson Act, and the Pennsylvania insurance law were in existence when the matter was first before the Bankruptcy Court and any arguments about their relationship with the FAA should have been developed then. This Court is especially loathe to interpret a state law issue when that issue has not been litigated in the lower court. See Barrett, F.2d at 26 (refusing to consider a Pennsylvania local court rule on appeal as basis for relief when not argued at trial or in bankruptcy court). [FN3] Additionally, plaintiffs extensively argued against arbitration under the American Dynasty policy in the Bankruptcy Court, yet did not argue that said policy is unconscionable. For sure, considerations underlying each of these subtle legal issues could have been exposed and distilled by the Bankruptcy Court to facilitate more informed consideration by this court. See Terkildsen v. Waters, 481 F.2d 201, 205 (2nd Cir.1973). Therefore, because plaintiffs failed to raise these issues, the Court finds that the FAA applies to American Dynasty and Zurich's policies.

> FN2. In plaintiffs' reply brief, they argue that the issue of whether the McCarran-Ferguson Act preempts the FAA was raised at a hearing in the Bankruptcy Court. However, upon review of the transcript to that hearing, the Court does not find the issue was adequately raised. In that hearing, plaintiffs' counsel merely stated that "I would say, the McClaren Ferguson [sic] does not permit the Federal Arbitration Act to enforce arbitration provisions, that would nullify those state statutes

Not Reported in F.Supp.2d                                                                                         Page 4
Not Reported in F.Supp.2d, 2000 WL 1470217 (E.D.Pa.)
(Cite as: 2000 WL 1470217 (E.D.Pa.))

regulating insurance." Such a conclusory statement fails to precisely define, nor develop the issue. Clearly, the Bankruptcy Court did not believe that plaintiffs' sufficiently raised the preemption issue because it did not address that issue in its March 2, 2000 Order.

FN3. Nonetheless, upon a review of the applicable law, the contract and the parties' arguments, the Court is unpersuaded that the McCarran-Ferguson Act, and the Pennsylvania insurance law precludes application of the FAA in this case. See *Miller v. National Fid. Life Ins. Co.*, 588 F.2d 185, 187 (5th Cir.1979); *Hart v. Orion Ins. Co.*, 453 F.2d 1358, 1360 (10th Cir.1971); *Hamilton Life Ins. Co. v. Republic Nat'l Life Ins. Co.*, 408 F.2d 606, 610-611 (2d. Cir.1969).

*3 The Court now turns to whether TIG's policy incorporates the arbitration clause in American Dynasty's policy. TIG's policy states in relevant part:

Except as otherwise provided herein, coverage under this Policy shall then apply in conformance with and subject to the warranties, limitations, conditions, provisions, and terms of the Primary Policy as in effect the first day of the Policy Period, together with the warranties and limitations of any other Underlying Insurance.

Additionally, the TIG policy has a service of suit clause that states:

In the event of the failure of the Insurers or Underwriters hereon to pay any amount Claimed to be due hereunder, the Insurer(s) or Underwriters hereon, at the request of the Insured (or reinsured), will submit to the jurisdiction of any Court of competent jurisdiction ...

Accordingly, plaintiffs' argue that because TIG's policy has a service of suit clause, incorporation of the American Dynasty arbitration clause would contradict the TIG policy and therefore cannot be incorporated. The Court disagrees.

The centerpiece of the FAA is section 2, which provides:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. When passing the FAA, Congress intended to place an arbitration agreement "upon the same footing as other contracts, where it belongs," H.R.Rep. No. 96, 68th Cong., 1st Sess. 1 (1924), and to make clear to both state and federal courts that they must enforce, as a matter of contract law, private agreements to arbitrate. *See id.* Thus, given the strong federal policy favoring arbitration, any doubts concerning the scope of arbitration issues should be resolved in favor of arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *see also Sharon Steel Corp. v. Jewell Coal and Coke Co.*, 735 F.2d 775, 777-78 (3d Cir.1984).

TIG's service of suit clause does not mention arbitration, nor is the arbitration clause in American Dynasty's policy clearly inconsistent with the contested service of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d	Page 5
Not Reported in F.Supp.2d, 2000 WL 1470217 (E.D.Pa.)
(Cite as: 2000 WL 1470217 (E.D.Pa.))

suit clause. Hence the two clauses do not appear to be inconsistent. See *Continental Cas. Co. v. Certain Underwriters at Lloyd's,* CIV. NO. C-92-4094-DLJ, 1993 WL 299232 *5 (N.D.Cal., July 21, 1993)(finding that an interpretation of a policy similar to plaintiffs' would eviscerate the arbitration clause and run contrary to common sense). Indeed, the purpose behind a service of suit provision is to is to "ease possible burdens which the insured might encounter in obtaining jurisdiction over the insurer." *Hart v. Orion Ins. Co.,* 453 F.2d 1358, 1361 (10th Cir.1971). On the other hand, the assent of an insurer to jurisdiction does not prevent it from raising an arbitration claim based on the policy terms. See *id.*

*4 Here, the service of suit clause can reasonably be interpreted to facilitate litigation following arbitration, concerning the validity of enforcement of any arbitration ruling, without curtailing the mandatory arbitration provision in any manner. See *West Shore Pipe Line Co. v. Associated Elec. & Gas Ins. Servs. Ltd.,* 791 F.Supp. 200, 204 (N.D.Ill.1992); see also *Montauk Oil Transp. Corp. v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd.,* 79 F.3d 295, 288 (2nd Cir.1996) (citing *West Shore Pipe Line Co.); NECA Ins., Ltd. v. National Union Fire Ins. Co. of Pittsburgh, Pa.,* 595 F.Supp. 955, 958 (S.D.N.Y.1984) (arbitration not waived by service-of-suit clause because service-of-suit clause only "designed to guarantee the enforcement of arbitration awards"). Moreover, any waiver of a mandatory arbitration provision should be explicit in view of the federal policy favoring arbitration. See *West Shore Pipe Line Co.,* 791 F.Supp. at 204; see also *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (explaining that Courts must rigorously enforce agreements to arbitrate).

Accordingly, the Court finds that the TIG policy incorporates the American Dynasty arbitration clause, and is therefore governed by the FAA.

Next, plaintiffs argue that National Union cannot compel arbitration under the FAA because National Union cannot satisfy the commerce requirement of the FAA. [FN4] The FAA governs any "maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction." 9 U.S.C. § 2. The Supreme Court has concluded that in light of the FAA's language, background, and structure, the word "involving" is broad and is the functional equivalent of "affecting." See *Allied-Bruce Terminix Companies, Inc. v. Dobson,* 513 U.S. 265, 275, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). Accordingly, the FAA governs contracts affecting commerce to the same extent as Congress' power to regulate interstate commerce. See *id.* [FN5]

> FN4. The Court notes that it is reluctant to even address this issue as plaintiffs merely raised this issue, before the Bankruptcy Court, in a footnote in their Memorandum of Law in Opposition to the Motion of National Union to Compel Arbitration. In that footnote, plaintiffs simply suggest that the FAA "may not apply to an arbitration agreement between two Pennsylvania Corporation." Plaintiffs hardly pursue the issue further.

> FN5. Under the Commerce Clause, Congress may regulate any activity that substantially affects interstate commerce. See *U.S. v. Lopez,* 514

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  Page 6
Not Reported in F.Supp.2d, 2000 WL 1470217 (E.D.Pa.)
(Cite as: 2000 WL 1470217 (E.D.Pa.))

U.S. 549, 559, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995).

Under familiar commerce clause jurisprudence, even the smallest connection to interstate commerce in a commercial context permits Congress to regulate certain activities. See, e.g., Wickard v. Filburn, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942). National Union sells insurance to corporations throughout the country and Elcom engaged in business outside of Pennsylvania. Had Elcom or its directors been sued by an out of state plaintiff, National Union's policy would have been implicated. Thus, the agreement in this case certainly affected interstate commerce. Moreover, there is evidence in the record that National Union has its principal place of business in New York making the contract between Elcom and National Union one involving interstate commerce. Thus, the Court finds that National Union's policy satisfies the commerce requirement of the FAA. See Roodveldt v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 585 F.Supp. 770, 779 (E.D.Pa.1984); Shearson Hayden Stone, Inc. v. Liang, 493 F.Supp. 104, 106 (N.D.Ill.1980).

*5 Finally, plaintiffs argue that its dispute with National Union should not proceed to arbitration because the arbitration clause in National Union's policy is unconscionable. Section 2 of the FAA provides that a written agreement to arbitrate in a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2. See Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 682, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996).

The Supreme Court has determined that, under the FAA, courts should determine questions concerning fraud in the inducement of an arbitration clause. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-404, 87 S.Ct. 1801, 18 L.Ed.2d 1270. Accordingly, under section 4 of the FAA, the federal courts must order arbitration to proceed once it is satisfied that "the making of the agreement for arbitration or the failure to comply (with the arbitration agreement) is not in issue." Id; see also Marschall v. Smith Barney, Inc., No. CIV.A. 95-1647, 1995 WL 303636, at *2 (E.D.Pa. May 17, 1995) (explaining that " § 4 requires the court to ensure that a valid agreement to arbitrate exists between the parties." and citing Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Corp., 868 F.2d 573, 576 (3d Cir.1989)). Today, it is clear that a Court's inquiry is not limited to whether the arbitration clause was induced by fraud, but has also been applied to the doctrine of unconscionability. See Northwestern Nat. Life Ins. Co. v. U.S. Healthcare, Inc., NO. CIV.A. 96-4659, 1998 WL 252353 * 7 (E.D.Pa., May 11, 1998).

While a court must decide whether an arbitration clause is valid, it may not consider the a claims of fraud in the inducement of the contract generally. See Prima Paint Corp., 388 U.S. at 404; Northwestern Nat. Life Ins. Co., 1998 WL 252353 at * 7. That role is for the arbitrator. See Prima Paint Corp., 388 U.S. at 404; Northwestern Nat. Life Ins. Co., 1998 WL 252353 at * 7.

*6 For a contract or a term to be unconscionable, the party signing the contract must have lacked a meaningful

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 7
Not Reported in F.Supp.2d, 2000 WL 1470217 (E.D.Pa.)
(Cite as: 2000 WL 1470217 (E.D.Pa.))

choice in accepting the challenged provision and the challenged provision must "unreasonably favor" the party asserting it. See *Witmer v. Exxon Corp.,* 495 Pa. 540, 434 A.2d 1222, 1228 (Pa.1981). In addition, the party who alleges unconscionability has the burden of proof. See *Borden, Inc. v. Advent Ink Co.,* 701 A.2d 255, 264 (Pa.Super.Ct.1997).

In the present case, because plaintiffs have alleged that the arbitration clause in National Union's policy is unconscionable, they have the burden of proof. The arbitration clause in the National Union policy is found at paragraph 17 of that policy, and states:

> It is hereby understood and agreed that all disputes or differences which may arise under or in connection with this policy, whether arising before or after termination of this policy, including any determination of the amount of loss, shall be submitted to the American Arbitration Association under and in accordance with its then prevailing commercial arbitration rules. The arbitrators shall be chosen in the manner and within the time frames provided by such rules. If permitted under such rules, the arbitrators shall be three disinterested individuals having knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute.
> Any party may commence such arbitration proceedings in either New York, New York; Atlanta, Georgia; Chicago, Illinois; or Denver, Colorado. The arbitrators shall give due consideration to the general principles of Delaware law in the construction and interpretation of the provisions of this policy; provided, however, that the terms, conditions, provisions and exclusions of this policy are to be construed in an evenhanded fashion as between the parties, including without limitation, where the language of this policy is alleged to be ambiguous or otherwise unclear, the issue shall be resolved in the manner most consistent with the relevant terms, conditions, provisions or exclusions of the policy ...
> The written decision of the arbitrators shall be provided to both parties and shall be binding on them. The arbitrators' award shall not include attorney fees or other costs.
> Each party shall bear equally the expenses of the arbitration.

Here, plaintiffs did not produce, nor did the Bankruptcy Court cite, any evidence that plaintiffs lacked meaningful choice when they accepted National Union's insurance policy. First, there is no evidence that plaintiffs had to accept the National Union policy as written. Indeed, plaintiffs failed to submit any evidence that they even tried to negotiate the arbitration clause; thus, the Court cannot say the National Union policy was offered on a "take it or leave it" basis. Moreover, it appears that plaintiffs could have chosen another policy, as this case demonstrates that they were also covered by the American Dynasty policy. At the very least, even if plaintiffs were only offered National Union's policy upon being named directors of Elcom, plaintiffs could have caused Elcom to switch policies once they became directors. Therefore, plaintiffs have not proven they lacked meaningful choice when they agreed to arbitrate claims under the National Union policy, and the Bankruptcy Court erred when it found National Union's arbitration clause unconscionable.

This Court having found National Union's policy was not unconscionable, the Bankruptcy Court further erred when it struck the parts of National Union's policy it

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                  Page 8
Not Reported in F.Supp.2d, 2000 WL 1470217 (E.D.Pa.)
(Cite as: 2000 WL 1470217 (E.D.Pa.))

found objectionable. *Cf. Countryside Oil Co., Inc. v. Travelers Ins. Co.,* 928 F.Supp. 474, 486 (D.N.J.1995) (refusing to reform the parties' contract where the Court found the contract was not unconscionable). Thus, because National Union's policy is not unconscionable, the FAA applies to National Union's policy.

*7 After much labor, the Court finally turns to the dispositive issue: whether the Court lacks subject matter jurisdiction to hear this appeal because the FAA governs the insurance contracts, and the Bankruptcy Court ordered the parties to arbitrate their cases.

Under section 16(b)(2) of the FAA, a party may not appeal an interlocutory order "directing arbitration to proceed under section 4 of this title." 9 U.S.C. § 16(b)(2). On the other hand, if an order compelling arbitration is not interlocutory, but final, an immediate appeal is proper. *See Smith v. The Equitable,* 209 F.3d 268, 271 (3rd Cir.2000). Whether an order was interlocutory or not depends on whether it arose from an independent or an embedded proceeding. *See id.*

Independent proceedings are those which have been brought initially for the sole purpose of compelling arbitration pursuant to Section 4 of the FAA, 9 U.S.C. § 4, and arise independently of any other lawsuit. *See Smith,* 209 F.3d at 271. By contrast, embedded proceedings are those in which an agreement to arbitrate forms a defense to a claim or claims brought before the court. *See id.* Thus, orders compelling arbitration in an embedded proceeding are interlocutory, and thus cannot be appealed according to Section 16(b) of the F.A.A. *See id.*

In this case, the motion to compel arbitration filed in the Bankruptcy Court was filed as part of an embedded proceeding. In the underlying complaint against the defendants, plaintiffs seek declaratory relief, indemnification, compensatory and punitive damages, and claim breach of contract. Defendants sought to compel arbitration only after plaintiffs filed suit against them, and therefore the order compelling arbitration is part of an embedded proceeding. Consequently, this Court lacks jurisdiction to hear plaintiffs' appeal under the FAA. [FN6]

> FN6. Section 16(b) of the FAA does not prohibit arbitrability from being considered on appeal if the appeal is sought pursuant to section 1292(b) of title 28. 9 U.S.C. § 16(b). However, in this case, plaintiff seeks to appeal based upon 28 U.S.C. § 158(a).

Plaintiffs make a rather desperate attempt to argue that even if the FAA applies to defendants' policies, the Court has jurisdiction to determine the merits of this appeal under the collateral order doctrine. That doctrine, first enunciated by the Supreme Court in *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), provides a narrow exception to the general rule permitting appellate review of only final orders. *See In re Ford Motor Co.,* 110 F.3d 954, 958 (3d Cir.1997). Under the collateral order doctrine, a party may appeal a nonfinal order if (1) the order from which the appellant appeals conclusively determines the disputed question; (2) the order resolves an important issue that is completely separate from the merits of the dispute; and (3) the order is effectively unreviewable on appeal from a final judgment. *See Rhone-Poulenc Rorer Inc. v. Home Indem. Co.,* 32 F.3d 851, 860 (3d Cir.1994).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                              Page 9
Not Reported in F.Supp.2d, 2000 WL 1470217 (E.D.Pa.)
(Cite as: 2000 WL 1470217 (E.D.Pa.))

In this case, plaintiffs fail to meet the third prong of the collateral order test outlined above. The Court is wholly unpersuaded by any of plaintiffs arguments that the March 2, 2000 order is effectively unreviewable. Indeed, the Third Circuit has held that the collateral order doctrine does not apply to an order compelling arbitration and staying an action pending the arbitration's resolution because review of that order and the dispute resolved by it will be available upon appeal from the final judgment after arbitration. *See Commonwealth Ins. Co. v. Underwriters, Inc., 846 F.2d 196, 198 (3rd Cir.1988).* Consequently, this matter should proceed to arbitration.

*8 Having failed to demonstrate any basis under the FAA to preclude this matter from proceeding to arbitration, plaintiffs argue that the FAA's mandates should not apply to this dispute because it involves "core" bankruptcy functions pursuant to *28 U.S.C. § 157,* and the Bankruptcy Court should resolve core proceedings. The Third Circuit has explained that an arbitration clause should be enforced pursuant to the FAA, unless its enforcement would seriously jeopardize the objectives of the Bankruptcy Code. *See Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 885 F.2d 1149, 1161 (3rd Cir.1989).* Plaintiffs weakly reason that core proceedings inherently implicate the Bankruptcy Code, and that this Court should therefore deny enforcement of the arbitration clauses.

However, core proceedings do not inherently implicate the Bankruptcy Code. *See Matter of National Gypsum Co., 118 F.3d 1056, 1067 (5th Cir.1997).* Moreover, assuming *arguendo* that this dispute did involve a core proceeding, this Court still may "exercise its full panoply of discretion ... in determining whether to refer [the] proceeding before it to arbitration. *In re Sacred Heart Hosp. of Norristown, 181 B.R. 195, 202 (Bankr.E.D.Pa.1995).*

Here, plaintiffs fail to argue that arbitration of this dispute would seriously jeopardize the objectives of the Bankruptcy Code. Simply put, this proceeding involves a contract dispute between non-debtors and does not jeopardize the Bankruptcy Code at all. The Bankruptcy Court confirmed a liquidating Plan of Reorganization (the "Plan") in August, 1998, and it does not appear that arbitration of the insurance coverage dispute will require interpretation of the Plan, nor will the arbitrators have to resolve any issue concerning bankruptcy law. Thus, this Court will not exercise its discretion to deny arbitration of the present dispute, and shall dismiss the appeal.

Not Reported in F.Supp.2d, 2000 WL 1470217 (E.D.Pa.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.